**UNITED STATES of America, Appellee,**

v.

**Charles J. McCLINTON, Appellant.**

**No. 86–1626.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1987.

Decided April 14, 1987.

Rehearing and Rehearing En Banc Denied July 17, 1987.

Stephen H. Gilmore, St. Louis, Mo., for appellant.

Richard L. Poehling, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, BRIGHT, Senior Circuit Judge, and ARNOLD, Circuit Judge.

HEANEY, Circuit Judge.

Charles J. McClinton appeals his conviction of possession of a firearm by a convicted felon in violation of 18 U.S.C. Appendix II § 1202(a)(1). We affirm.

On January 21, 1986, in furtherance of an ongoing investigation by police officers and FBI agents, Magistrate Carol Jackson issued a federal search warrant, based upon information of possible violations of federal firearm and drug statutes, authorizing a search of room 129 of the Red Roof Inn in Florissant, Missouri. Early in the morning of January 23, 1986, law enforcement officers executed the warrant. In response to the officers' requests, McClinton answered the door to the room appearing as if he had just woken up. Inside the room, the officers found Liddell Green on one of two beds, undressed, with a loaded gun near his hand. A subsequent search revealed a loaded gun underneath a pillow on the other bed.

Both Green and McClinton were arrested and charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. Appendix II § 1202(a)(1). McClinton and Green were both found guilty after a bench trial. During the trial, the government introduced evidence that McClinton had previously been convicted of three prior felonies[1] and argued that, under the relevant statute, the court must impose a mandatory minimum prison sentence of fifteen years without possibility of parole.[2] The court agreed and imposed the mandatory fifteen year sentence. McClinton appeals arguing that the evidence produced at trial was insufficient to sustain the harsh sentence and that the enhanced sentence violates due process and equal protection by unduly limiting the discretion of the trial judge in sentencing decisions and by irrationally classifying convicted felons. We disagree.

The government produced evidence at trial to show that the room was registered to McClinton, that the bed upon which the gun was found was mussed up and McClinton appeared to have just awoken, that McClinton's boots were located near the bed, and that Green was occupying the only other bed in the room. From this evidence, the court was justified, despite McClinton's denial, in finding "that

---

1. Exhibits introduced by the government show, and the district court found, that on February 5, 1963, in the Circuit Court of the City of St. Louis, McClinton plead guilty to three burglaries. These were:

    1) breaking and entering into the K and M Cafe on April 20, 1962, and stealing property of an unspecified amount.

    2) breaking and entering into Janet's Shrimp House on November 22, 1962, and taking all the change in the juke box, change from two pinball machines, and change from a cigarette machine as well as 20 packages of cigarettes.

    3) breaking and entering the Melody Lounge on December 16, 1962, and stealing cash and liquor worth $79.14.

    McClinton was represented by a public defender in the plea process and was sentenced to concurrent two year terms for each offense. He was paroled on February 4, 1964. In testimony taken after the close of evidence in the instant case, McClinton stated that at the time of the plea he understood he was charged with three separate felonies but thought he was pleading guilty to only one charge.

2. The relevant portion of the statute states:

    In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions * * * for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

under all of the circumstances, McClinton was in possession of [the gun] as that possession is required [by 18 U.S.C. Appendix II § 1202(a)(1) ]." District court's findings of fact, Tr. Vol. 2 at 39.

McClinton also argues that the increased sentence provided by the statute unconstitutionally invades the province of the trial judge in the exercise of his sentencing discretion. Additionally, McClinton raises an equal protection challenge to the statute arguing that it impermissibly singles out defendants such as McClinton and treats them differently than other convicted felons.

■ At the outset, we recognize that "the authority to define and fix the punishment for crime is legislative." *Ex parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129, 140 (1916). Thus, a law fixing the punishment for a crime is not unconstitutional merely because it removes discretion from the judiciary to sentence as it might wish. This is so even if the net effect of the punishment is, as in this case, to shift enormous discretion into the hands of the prosecutor who can choose or refuse to indict on multiple felonies.

■ This is not, however, the end of the inquiry. Although Congress has the authority to fix the punishment for crime, it must do so in a constitutional manner. In this regard, McClinton challenges the punishment fixed by the statute under which

he was convicted as violative of his rights to equal protection of the law.[3] We do not, however, understand McClinton to argue, and the record does not reflect, that the classification of the statute should be subject to some heightened standard of review because it has a disparate impact upon some protected class. Rather, McClinton contends that the statute must be struck down as an irrational or arbitrary exercise of the government's authority.

■ McClinton's argument is not entirely without merit. The increased penalty of 18 U.S.C. Appendix II § 1202(a)(1) applies only to those with three prior robbery or burglary convictions as those terms are defined in 18 U.S.C. Appendix II §§ 1202(c)(8) and (9). It does not apply to more serious offenses, nor is there any limit on the length of time for which a conviction may be considered or the amount of property that must be taken in order for a robbery or burglary to be counted. Thus, although the law enforcement investigation in this case was focused on possible drug related activities of McClinton's co-defendant, Liddell Green, and although Green had previously been convicted of conspiring to manufacture, possess, and distribute heroin and had been sentenced to ten years imprisonment for that conviction, and although there is some evidence in the record indicating that Green also had prior convictions for armed robbery and first degree burglary,[4] Green did

---

3. Technically, McClinton's argument misses the mark because the fourteenth amendment applies only to the states and not to the federal government. The Supreme Court has stated, however, that "[t]his Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to claims under the Fourteenth Amendment." *Weinberger v. Wisenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975). Thus, we will approach McClinton's claims as if he had raised them under the fifth amendment right to due process which is applicable to the federal government and incorporates principles of equal protection.

4. Mention of prior convictions for armed robbery and first degree burglary is found in the affidavit of Detective Joseph Murphy in support of the request for a search warrant. It does not appear that evidence of these two convictions was presented during the prosecution's case in

chief. We note that evidence of the convictions may well have been inadmissible during the trial because they did not constitute elements of the offense for which Green was indicted and were too old to be admissible as evidence of Green's character. *See* Fed.R.Evid. 609(b) (limiting admissibility of evidence of most prior crimes to those committed within the previous ten years). We note that McClinton's prior crimes were most likely also inadmissible as character evidence. During the government's cross-examination, the following exchange occurred:

By MR. POEHLING [the prosecutor]:
Q. Mr. McClinton, have you ever been convicted of a crime?
A. Yes, sir.
MR. GILMORE [McClinton's attorney]: Now, your Honor, I will make an objection to that, because I think the convictions they are getting into—I realize we don't have a jury—

not qualify for the increased penalty and received only the statutory maximum of two years for his possession of a firearm. McClinton, on the other hand, who had been convicted of three burglaries some twenty-five years ago in which the total value of the property taken was, in all probability, less than $500 received a mandatory minimum sentence of fifteen years in prison without possibility of parole.

Yet, despite the obvious merit of McClinton's argument, it is difficult to say that the increased penalty provided in the statute was not rationally related to a legitimate concern of the federal government. As Senator Specter stated when he introduced his bill on the subject:

> Robberies and burglaries are the most damaging crimes to society. Robberies and burglaries occur with far greater frequency than other violent felonies, affect many more people, and cause the greatest losses. A person is 40 times more likely to be a victim of a robbery than a rape.
>
> Robberies involve physical violence or the threat thereof, being deliberately directed against innocent individuals. Burglaries involve invasion of their homes or workplaces, violation of their privacy, and loss of their most personal and valued possessions. Often—30 percent of robberies—these offenses result in physical injuries; usually—90 percent for robberies—they result in significant financial loss; always they inflict psychological injury. Such crimes force people to live not in freedom, but in fear.
>
> Most robberies and burglaries are committed by career criminals. A high percentage of robberies and burglaries are committed by a limited number of repeat offenders. Many commit scores of offenses. Some studies estimated that the majority of these offenses are committed by career criminals. Career criminals often have no lawful employment; their

full-time occupation is crime for profit and many commit crimes on a daily basis.

H.R.Rep. No. 1073, 98th Cong., 2d Sess. at 3, *reprinted in,* 1984 U.S.Code Cong. & Admin.News 3661, 3663.

Thus, it is clear that, rightly or wrongly, Congress felt the recidivist nature of those convicted of robbery and burglary, and the seriousness of those crimes called for the increased penalty of 18 U.S.C. Appendix II § 1202(a)(1). What is not clear is whether Congress considered placing limits on the use of aged convictions or on the seriousness of the convictions in devising this dragnet in which it hoped to capture career criminals.

Sentencing those convicted of crime is among the most difficult of the tasks judges are called upon to perform. It involves weighing the punitive, deterrent, and rehabilitative benefits of a sentence against the extreme costs of confinement to the offender and to society. The task becomes even more difficult when it is undertaken, as Congress must, in the abstract, without the benefit of a concrete factual case.

Congress saw fit to define robbery and burglary for purposes of the statute and neither definition places a limit on the age of the conviction or the seriousness of the offense. *See* 18 U.S.C. §§ 1202(c)(8) and (9). Moreover, the statute is clear that all that is required for the increased penalties is three prior burglary or robbery convictions. Thus, although we have no choice but to affirm McClinton's conviction, we would urge Congress to consider whether it intended the result reached here and whether the result is just. Accordingly, we affirm.

---

THE COURT: There is another side.

MR. POEHLING: It is outside of the ten years. Mr. Gilmore is correct.

MR. GILMORE: I am making an objection.

MR. POEHLING: I will withdraw the question.

are longer than ten years from the time of this particular offense. They go back to 1962, and I think the other conviction—

THE COURT: That relates to the credibility of things—

MR. GILMORE: I understand.