UNITED STATES of America

v.

**BALASCSAK, Robert J., Appellant.**

No. 88–5089.

United States Court of Appeals,
Third Circuit.

Argued June 21, 1988.

Reargued In Banc Jan. 30, 1989.

Decided April 20, 1989.

---

George E. Schumacher, Federal Public Defender, James V. Wade, First Asst. Federal Public Defender, Daniel I. Siegel, (argued), Harrisburg, Pa., for appellant.

James J. West, U.S. Atty., Theodore B. Smith, III (argued), Harrisburg, Pa., for appellee.

Argued June 21, 1988.

Before GIBBONS, Chief Judge, and HIGGINBOTHAM and HUNTER, Circuit Judges.

Reargued In Banc Jan. 30, 1989.

Before GIBBONS, Chief Judge, and SEITZ, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN and NYGAARD, Circuit Judges.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

GIBBONS, Chief Judge:

Robert Balascsak appeals from a judgment of sentence imposed pursuant to the Armed Career Criminal Act of 1984, 18 U.S.C.App. § 1201(a).[1] Balascsak pleaded guilty to a charge of possession of a firearm by a convicted felon in violation of 18 U.S.C.App. § 1202(a)(1). The government sought an enhanced sentence under the Armed Career Criminal Act, and the court imposed the mandatory minimum of fifteen years imprisonment without parole. Balascsak contends that the sentence should be vacated and the case remanded for resentencing because the Armed Career Criminal Act does not apply to the conduct relied on by the sentencing court. We agree, and we will vacate the judgment of sentence and remand for resentencing.

### A.

Balascsak's plea of guilty to a violation of 18 U.S.C.App. § 1202(a)(1) is not in issue on this appeal. The charge to which he pleaded arose out of his purchase, on September 29, 1986, of a shotgun from a licensed gun dealer in Danville, Pennsylvania. In making the purchase he falsely certified that he had never been convicted of a crime punishable by imprisonment for a term exceeding one year. He does not dispute that his possession of the shotgun violated the governing federal statute.

### B.

The statute under which the government moved for an enhanced sentence provides in relevant part:

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony

. . . . .

1. Following the enactment of the Firearms Owners' Protection Act of 1986, Pub.L. No. 99–308, 100 Stat. 449 (1986), the codification of Balascsak's substantive offense and of the Armed Career Criminal Act were changed. They now appear respectively at 18 U.S.C. § 922(g) and 18 U.S.C. § 924(e).

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearms and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

18 U.S.C.App. § 1202(a) (1982 & Supp. II 1984). In addition to felons, the statute bars dishonorably discharged veterans, mental incompetents, those who have renounced U.S. citizenship, and illegal aliens from receiving, possessing, or transporting firearms. The second sentence quoted above, containing the greater penalties for persons with three previous convictions, was added by amendment in 1984. Pub.L. No. 98–473. This court has held that the 1984 amendment did not create a new offense, but rather is merely a sentencing enhancement provision. *United States v. Hawkins*, 811 F.2d 210 (3d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987).

In order to have the enhanced sentence imposed on Balascsak the government had to provide evidence of three prior felony convictions. In its original notice of intent to seek an enhanced sentence, the government listed three prior felony convictions in the Court of Common Pleas of Bucks County.[2] The government produced evidence

that on May 21, 1981, Balascsak was found guilty of and sentenced for burglary in the Court of Common Pleas of Bucks County, Pennsylvania. During the night of July 10–11, 1981, Balascsak committed two more burglaries; one at a residence in Levittown, Pennsylvania, at about 10:45 p.m. and a second at a residence one block away from the first, some time between 11:00 p.m. and 7:00 a.m. the next morning. The July 10–11 burglaries were charged in separate informations to which Balascsak, represented by counsel, pled guilty in November of 1981. In February of 1982, the Court of Common Pleas of Bucks County imposed concurrent sentences on the July 10–11 burglaries.

In March of 1983, Balascsak, represented by new counsel, petitioned for a new trial on the July 10–11 charges on the ground that his counsel was incompetent. While the initial petition sought a new trial, it alleged that Balascsak's counsel had improperly handled the sentencing stage of the case. Perhaps realizing that error at the sentencing stage would not warrant a new trial, Balascsak's new attorney filed an amended petition seeking only a new sentencing rather than new trial. On April 14, 1983, a judge of the Court of Common Pleas vacated Balascsak's sentence and ordered a new sentencing hearing. On April 21, 1983, the same judge ordered that Balascsak be transported from his place of incarceration to the Bucks County Jail so that he might confer with his attorney in preparation for his "reconsideration of sentencing hearing." So far as the record before us reveals, nothing further transpired in the state court. We do not know if any resentencing hearing took place. However, on April 26, 1983, a different Common Pleas judge in Bucks County ordered Balascsak paroled forthwith on the judgment of sentence in the May 1981 burglary conviction, and he was apparently

---

**2.** The government subsequently sought to amend its notice by listing a fourth burglary conviction, and Balascsak objected to this amendment. The district court, finding that the three convictions listed in the government's original notice sufficed for purposes of the Armed Career Criminal Act, stated that there was no

need to decide whether the notice could be amended. The government concedes that since the district court did not rely on this other burglary, the propriety of considering this other alleged conviction should be left to the district court in the first instance.

released on parole. It is not possible to tell from the record before us whether this parole occurred before or after the time when Balascsak would have been released on the sentence for the July 10–11, 1981 burglaries if it had not been vacated. But, in any event, the district court imposed an enhanced sentence on the basis of the record outlined above, and we must look to it in deciding whether that action was proper.

### C.

■ Balascsak's first objection to the enhanced sentence is that the court relied on the July 10–11 burglary convictions, despite the fact that the sentences on those charges were subject to a pending challenge. He argues that an "inexplicable breakdown" in the operation of the Pennsylvania court system prevented the final resolution of his challenge to the judgment of sentence imposed on the July 10–11 burglary charges, and that for this reason they may not be considered as convictions for purposes of enhanced punishment under 18 U.S.C.App. § 1202(a). That argument must be rejected.

In a case decided before the enhanced penalty for three-time offenders was added, the Supreme Court held that the term "convicted" in the first part of the statute is unambiguous and includes convictions subject to collateral attack. *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). The Court concluded that "§ 1202(a)(1) prohibits a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds." 445 U.S. at 65, 100 S.Ct. at 921. It rejected, however, a reading of the statute that includes as a "conviction" a predicate conviction that has been reversed on appeal. Instead, it viewed "the language Congress chose as consistent with the common-sense notion that a disability based upon one's status as a convicted felon should cease only when the conviction upon which that status depends has been vacated." 445 U.S. at 61 n. 5, 100 S.Ct. at 918, n. 5. The Court interpreted the statute as "imposing

a civil firearms disability, enforceable by a criminal sanction," on those whom Congress viewed as potentially dangerous. 445 U.S. at 67, 100 S.Ct. at 922. Someone convicted of a felony must clear his status *before* obtaining a firearm. 445 U.S. at 64–65, 100 S.Ct. at 920–921.

In *Dickerson v. New Banner Institute*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), a case arising under 18 U.S.C. §§ 922(g) and (h) rather than 18 U.S.C.App. § 1202, the Court held that a plea of guilty which was never reduced to judgment and was eventually expunged under state law was nevertheless a firearm disability. Under the Iowa statutes then in effect, a trial judge could, upon a plea of guilty and with consent of the defendant, defer judgment and place a defendant on probation. Upon fulfillment of the terms of probation, the defendant would be discharged without entry of judgment. Here, as in *Dickerson*, there was a guilty plea to the July 10–11 burglary charges, which Balascsak has never sought to withdraw. The Court in *Dickerson* relied heavily on *Lewis*, noting that the two gun control statutes are similar, partially overlapping, and indeed that it "dectect[ed] little significant difference between the two." 460 U.S. at 111, 103 S.Ct. at 991 (quoting *Lewis*). Acknowledging that sometimes the term "convicted" is limited to persons against whom a formal judgment has been entered, it rejected such an interpretation since the congressional intent "in enacting §§ 922(g) and (h) and § 1202 was to keep firearms out of the hands of presumptively risky people," emphasizing that sections 922(g) and (h) apply not only to those convicted but also to those merely under indictment. 460 U.S. at 112 n. 6, 103 S.Ct. at 991 n. 6. It held that where a defendant pleads guilty, the plea is noted by the court, and the court sentences him to probation, he has been "convicted" within the meaning of section 922(g) and (h). 460 U.S. at 114, 103 S.Ct. at 992. The Court quoted with approval the statement that "once guilt has been established whether by plea or by verdict and nothing remains to be done except pass sentence, the defendant has been convicted within the intendment of

Congress." *Id.* (quoting *United States v. Woods*, 696 F.2d 566, 570 (8th Cir.1982)); *see also United States v. Adams*, 771 F.2d 783, 789 (3d Cir.) ("convicted" as used in the dangerous special offender provisions of 18 U.S.C. §§ 3575–78 includes guilty verdicts and pleas that have not been implemented by a judgment), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985).

The Court in *Dickerson* then turned to the question whether the expunction of the state court's record nullified the conviction for purposes of the federal statute. It noted that the face of the statute contains no such exception but acknowledged that *Lewis* "recognized an obvious exception to the literal language of the statute for one whose predicate conviction had been vacated or reversed on direct appeal." 460 U.S. at 115, 103 S.Ct. at 993. The Court found an exception for an expunged conviction, "unlike one reversed or vacated due to trial error, ... far from obvious." *Id.* "[E]xpunction does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty." *Id.*

The Court thought this conclusion fortified by various other provisions of the federal gun control laws, including most significantly for this case, the pardon provision of 18 U.S.C.App. § 1203(2). That provision exempts from the firearms disability of section 1202, "any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess, or transport in commerce a firearm." Thus a pardon without explicit firearm authorization is insufficient to remove the disability. "It is inconceivable that Congress could have so provided and yet have intended ... to give a state expunction a contrary and unconditional effect." 460 U.S. at 117, 103 S.Ct. at 994.

Under *Dickerson*, it is clear that Balascsak was "convicted" when he pled guilty, the plea was accepted, and sentence imposed. The question is whether the vacat-

ing of the sentence nullifies the conviction. There is no doubt that if the *conviction* had been vacated (for example, if the petition for a new trial had been granted) this would nullify the conviction under the "obvious" exception to the literal language noted in *Lewis* and *Dickerson*. However, since expunging the record does not nullify a conviction, it is difficult to see why vacating a sentence with the intention of resentencing should nullify the conviction. Neither the legality nor the accuracy of the conviction is called into question by granting a petition for resentencing. Judged from the perspective of a prediction concerning who can be trusted with a dangerous weapon, the granting of a petition for resentencing gives no assurance whatsoever that the defendant should be so trusted. *Cf. Dickerson*, 460 U.S. at 120–21, 103 S.Ct. at 995–96 ("[T]he circumstances surrounding the expunction of his conviction provide little, if any, assurance that Kennison is a person who can be trusted with a dangerous weapon").

We note that *Dickerson* was largely overruled by the Firearms Owners' Protection Act, Pub.L. 99–308, sec. 101, 100 Stat. 449. That Act provides that a "conviction" is to be determined in accordance with the law of the jurisdiction in which the proceeding was held and that a conviction which has been expunged or for which a person has been pardoned shall not be considered a conviction, unless the expunction or pardon expressly provides for a firearm disability. There are two reasons why this provision is not of help to Balascsak. First, there is no indication that the provision was meant to apply to violations of § 1202 which occurred prior to the effective date of the Act. *See United States v. Pennon*, 816 F.2d 527, 529 (10th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 506, 98 L.Ed.2d 504 (1987); *United States v. Orellanes*, 809 F.2d 1526 (11th Cir.1987), *petition for cert. filed*, — U.S. ——, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988); *see also* 1 U.S.C. § 109 (1982). Second, the provision simply does not apply to a vacated sentence where the conviction itself remains intact.

Thus the failure of the Pennsylvania Court of Common Pleas to complete the

resentencing on the July 10–11 burglaries is irrelevant for purposes of section 1202(a) sentence enhancement. The relevant factor is that he pled guilty to those burglaries and that the guilty plea has never been challenged, let alone vacated. The guilty plea is a conviction. Whether it is one of three previous convictions, thus requiring an enhanced sentence, is a separate matter.

### D.

Balascsak contends that even if the guilty plea to the July 10–11 burglaries establishes a conviction it does not establish the "three previous convictions" to which section 1202(a) refers. The record before us establishes the May 1981 burglary conviction in the Court of Common Pleas, and the November 1981 guilty pleas to two July burglaries. Balascsak was indicted on March 3, 1987, for a violation of section 1202(a), and on March 4, 1987, the government filed a Notice of Intention to Seek Enhanced Sentencing under the Armed Career Criminal Act. A superceding indictment was returned on April 14, 1987, followed by a second notice of intention to seek an enhanced sentencing. Both notices made reference to these Court of Common Pleas convictions as predicates for the application of the enhancement provision of section 1202(a). A second superceding indictment, differing only in one word from the first superceding indictment, was returned on May 14, 1987.

There is no express requirement in section 1202(a) that the three convictions be separated in time. This stands in contrast to two other enhanced penalty provisions enacted by Congress which both provide that the prior convictions must be for offenses "committed on occasions different from one another." 18 U.S.C. § 3575(e)(1) (1982) (repealed effective Nov. 1, 1987) (special dangerous offender); 21 U.S.C. § 849(e)(1) (1982) (repealed effective Nov. 1, 1987) (special drug offender). Applying the instant statute quite literally, the Court of Appeals for the Eighth Circuit affirmed an enhanced sentence where the prior convictions relied upon included convictions on six counts of armed robbery, even though the six victims were in one restaurant and robbed at the same time. *United States v. Petty*, 798 F.2d 1157 (8th Cir.1986), *vacated*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987).

In response to Petty's petition for a writ of certiorari, the Solicitor General confessed error. The Solicitor General began by noting that the phrase "three previous convictions" is ambiguous. (Brief at 25, reprinted in the Appendix at 185). He acknowledged that the difference between this phraseology and that employed in other sentencing enhancement provisions might ordinarily be significant, but concluded that "the legislative history of the Armed Career Criminal Act of 1984 makes it appear that both Congress and those supporting the legislation, including the Department of Justice, did not intend that the penalty provisions would apply more broadly than in the case of the other federal enhanced penalty statutes." (Brief at 25–26; A. 185–86). After reviewing that legislative history, the Solicitor General stated, "[W]e believe that the underlying purpose of the statute and the intent of Congress ... indicate that the court of appeals was in error in construing the statute to reach multiple felony convictions arising out of a single criminal episode." (Brief at 29–30; A. 189–90). In response to the position of the Solicitor General, the Supreme Court granted the petition as to this issue and remanded to the court of appeals for reconsideration. 107 S.Ct. 1968 (1987). On reconsideration, the court of appeals vacated the enhanced sentence. 828 F.2d 2 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988).

The Solicitor General viewed the legislative history as indicating that neither Congress nor the Justice Department intended that the enhanced penalty provision would apply "more broadly than in the case of other federal enhanced penalty statutes." (Brief at 25–26, A. 185–86). Those other statutes require that the prior convictions be for offenses "committed on occasions different from one another." Viewed in this light, "distinct in time" is simply a

paraphrase of "committed on occasions different from one another." In *Petty*, distinguishing between these two ways of phrasing the standard was not necessary since it was clear that the robberies did not meet either standard. However, at a minimum, the offenses must have been committed on occasions different from one another in order to impose the enhanced sentence. The phrase "distinct in time" cannot properly be understood to create a different standard, easier for the government to meet.

The history of the *Petty* case establishes that the language "who has three previous convictions" does not mean simply "who at the time of sentencing has been convicted of three separate offenses." Had that been the intended meaning, the Solicitor General obviously would have defended the enhanced sentence in *Petty*. Short of such a mechanical reading of the "who has three previous convictions" language, however, the meaning of the provision is far from clear. The *Petty* history establishes that the temporal term "previous" does not mean merely previous to the instant sentence, and the section does not with any clarity point to the additional event to which "previous" refers. The ambiguity is compounded by the reference to "convictions," for the use of that term conclusively establishes that Congress did not intend to impose an enhanced sentence based upon prior misconduct standing alone rather than adjudicated prior misconduct. There must be three adjudications of misconduct taking place prior to some antecedent event. The only antecedent events mentioned in the provision dealing with the enhanced sentence are the receipt, possession, or transportation of a firearm. Thus the only reading of the statute which gives meaning to all the terms used by Congress is that the three prior convictions—adjudications of guilt—must have occurred prior to the time the defendant received the firearm. Yet even this reading does not remove the ambiguity which the Solicitor General conceded in *Petty,* for in that case the armed robbery convictions which the prosecutor relied on did occur prior to the

gun offense. Thus we must look beyond the text to other materials which may guide us to Congress's likely intention.

What eventually became the 1984 amendments to 18 U.S.C.App. 1202(a) began with a proposal by Senator Arlen Specter [3] to create federal jurisdiction over state-law armed burglary and armed robbery offenses committed by career criminals. A "career criminal" was defined in the bill as one who commits such a felony "after having been twice convicted of a robbery or a burglary in violation of the felony statutes of a State or the United States." S. 1688, *reprinted in Career Criminal Life Sentence Act of 1981: Hearings on S. 1688, S. 1689, and S. 1690 Before the Subcomm. on Juvenile Justice of the Senate Comm. on the Judiciary,* 97th Cong., 1st Sess. 4 (1981) (*1981 Hearings*). Upon conviction in federal court, the defendant would be sentenced to life imprisonment; suspension of sentence would not be permitted.

Senator Specter introduced a revised version of the bill which was favorably reported by the Senate Judiciary Committee during the second session of the 97th Congress. S.1688, *reprinted in* S.Rep. No. 585, 97th Cong., 2d Sess. 3 (1982). In this version, the focus (as evidenced by the title) remained on armed career criminals, although it no longer defined the term explicitly. The major change relevant here is that the penalty was reduced from life imprisonment to a mandatory minimum of fifteen years without suspension, probation, or parole. The theory of the bill was that "a small number of repeat offenders commit a highly disproportionate amount of the violent crime plaguing America today." *Id.* at 20. The Committee relied in part on the testimony of Dr. Peter Greenwood of the Rand Corporation whose research found multiple factors which permitted him to distinguish between low-rate criminals and high-rate criminals. He testified that the "two priors for robbery or burglary specified in the bill does almost as well as" his own multiple-factor scale in distinguishing between the two groups of criminals. *1981 Hearings* at 100 (1981);

---

**3.** Senator Specter is a former state prosecutor.

noted in S.Rep. No. 585 at 24. Dr. Greenwood also stated that "[t]otal prior convictions has nothing to do with rate of offending. The fact that someone is being prosecuted for multiple counts does not have anything to do with rate of offending. Typically it has to do with one criminal episode rather than a long string of crimes." *1981 Hearings* at 98.

> The Report emphasized that the bill
>
> is very narrowly aimed at the hard core of career criminals with long records for robbery and burglary offenses who have now "graduated" to the point of dangerousness and recklessness that they are using firearms to commit further robberies and burglaries. Accordingly, the robbery provisions of S. 1688 only apply to a very small portion of the total robberies occurring in the United States. The important feature of the bill is that it focuses on the very worst robberies, by the very worst offenders with the worst records.

S.Rep. No. 585 at 62–63. "The title is meant to suggest that the Bill have limited scope in that it only deals with career criminals and only those career criminals who are armed." *Id.* at 69.

The Report noted that the bill originally called for life imprisonment and justified that provision as follows:

> [T]he Act was so narrowly drawn to apply to only the most repetitive and violent and dangerous offender, that a life sentence would be justified in any case that could reasonably be expected to be prosecuted under the Act. Indeed, it is the underlying premise of the Act that at a certain point, a career criminal becomes practically impossible to rehabilitate.
>
> .   .   .   .   .
>
> [T]he idea was that once the career criminal had become a "three time loser," the only reasonable disposition is permanent incarceration.

*Id.* at 76–77. The switch to a fifteen year term was accepted for a number of reasons, including the acknowledgment of "hypothetical circumstances" where the Act would be violated but a life sentence might "arguably" not be justified and the

reality that there is a "rapid fall off in the rate of offenses committed by career criminals" once they are in their thirties or forties. *Id.* at 77.

S.1688 was passed by both Houses of Congress as part of a larger package, but President Reagan pocket-vetoed it. The President's objection to this aspect of the package concerned the relationship between federal and local prosecutors. The bill was again introduced by Senator Specter, and it was reported favorably by the Judiciary Committee. S. 52 *reprinted in* S.Rep. No. 190, 98th Cong., 1st Sess. 1 (1983). As it emerged from the Committee, the bill was substantially reorganized. Instead of referring to persons who commit armed burglary or robbery "after having been twice convicted," it required the prosecution to prove beyond a reasonable doubt that the defendant "has been convicted of at least two offenses described in subsection (c)." *Id.* The report is largely lifted from the earlier report, explaining that the bills are "substantially similar" and (apart from a change designed to meet the President's objection) described the changes as technical. *Id.* at 3. This report, like the previous one, emphasized that the law was meant to apply to "the most egregious situations" and "the most extraordinary cases." *Id.* at 18, 19.

Up to this point in the development of the bill, it would have, in effect, federalized the crimes of armed burglary and armed robbery when committed by a person with two priors. The proponents of the bill were sensitive to the federalism concerns inherent in such an arrangement, and sought to make clear that federal prosecutors should rarely (if ever) get involved without the consent of the local prosecutor. This was insufficient for the full Senate, which amended the bill to apply only if the armed robbery (after two priors) was already one which could be prosecuted in federal court. S. 52 (as passed by the Senate), *reprinted in Armed Career Criminal Act: Hearing on H.R. 1627 and S. 52 Before the Subcomm. on Crime of the House Comm. on the Judiciary,* 98th Cong., 2d Sess. 6 (1984) (*1984 Hearing*).

Senator Specter appeared before the House Subcommittee on Crime to request that the House pass the bill as it emerged from the Senate committee, not as it had been "emasculated" on the Senate floor. *1984 Hearing* at 14. He made clear that the unemasculated bill was aimed at "one person crime waves." *1984 Hearing* at 19.

Under all versions of the bill considered by Congress to this point, it is manifest that a person who committed three burglaries on the same night could not (without other prior convictions) be considered a career criminal. Only a person who had been twice convicted *before committing* the third crime would possibly be prosecuted under the bill. While the required relationship between the two priors themselves is not obvious, it *is* obvious that the two priors must have resulted in convictions *before* the third crime took place. Three armed robberies—even months apart— would not be enough, unless there were convictions for two of them before the third took place.

The House Committee came up with a different solution to the federalism problem. Rather than create federal jurisdiction over state crimes or limiting the bill to situations where there was already federal jurisdiction over robberies or burglaries, the House proposed to amend the 18 U.S.C. App. § 1202 to provide for enhanced penalties for armed career criminals. The report explained:

> [A]lthough there [is] a need to extend some Federal aid to curb these career criminals there [are] serious reservations as to the appropriateness of prosecutions of local burglaries or robberies under a Federal statute.

>     .     .     .     .     .

> Under [the proposed amendment to § 1202], if the local authorities arrest a three-time loser in possession of a gun (in the course of a robbery or burglary or otherwise) and can convince the U.S. Attorney that circumstances warrant prosecution under the enhanced penalty provisions of this bill, the mandatory 15–year penalty is available.

H.R.Rep. No. 1073, 98th Cong., 2d Sess. 4, 5 (1984), U.S.Code Cong. & Admin.News 1984, pp. 3182, 3664, 3665. This approach was accepted by the full House and Senate and was signed by the President.

We have located nothing in the legislative history that suggests that the House revision was in any way intended to broaden the scope of those who could come within the net of the Armed Career Criminal Act of 1984. The bill remained aimed at "one-person crime waves," "career burglars who commit a burglary a day and career robbers who commit a robbery every couple of days." 130 Cong.Rec. H. 10551 (daily ed. Oct. 1, 1984). The switch from two priors to three priors appears to have been intended to account for the third crime which, under Senator Specter's proposal, would have been prosecuted in federal court. Under no proposal would someone have been eligible for the fifteen-year mandatory minimum without committing at least three burglaries or robberies.

■ As noted above, under the Specter proposal, three burglaries on the same night could not possibly subject a defendant to the fifteen-year mandatory minimum. Since the House revision was not intended to broaden the reach of the law, but rather only to alleviate federalism concerns, it should not be interpreted to permit enhanced penalties based on three burglaries on one night. Moreover, if the House revision is construed as expanding the reach of the law, at an absolute minimum, convictions for the first two crimes must have been rendered before commission of the third crime. In this case, there was only one conviction outstanding when Balascsak burgled the two houses in July of 1981. Thus, under the Specter proposal, Balascsak could not have been prosecuted in federal court. To allow the enhanced sentence in this case would be to interpret the House revision as casting a broader net than the Specter proposal, and there is no evidence that this was intended.

As also noted above, the relationship between the first offense and the second offense in the Specter proposal is less obvious than the relationship between the first

two offenses and the third. Given the narrow focus of the bill, the most reasonable interpretation would be to require the same relationship. That is, the first conviction must have been rendered before the second crime was committed. The bill was aimed at a small number of hard-core offenders, and was explicitly motivated by concerns that some state courts operated as a "revolving door." S.Rep. No. 190 at 6. A person who commits two burglaries without an intervening conviction has hardly been through a "revolving door." The sort of "three-time loser" which the supporters of the bill had in mind is one who is convicted of one crime, then commits a second, and then commits a third. Stephen Trott, Assistant Attorney General, Criminal Division, put it most graphically in his testimony before the House Subcommittee on Crime:

> These are people who have demonstrated, by virtue of their definition, that locking them up and letting them go doesn't do any good. They go on again, you lock them up, you let them go, it doesn't do any good, they are back for a third time. At that juncture we should say, "That's it; time out; it is all over. We, as responsible people, will never give you the opportunity to do this again."

*1984 Hearing* at 64.

Such an interpretation is consistent with the interpretation by most states of their habitual offender statutes. For example, in *State v. Carlson*, the Supreme Court of Alaska stated:

> [T]he rule followed in the majority of jurisdictions is that each successive felony must be committed after the previous felony conviction in order to count toward habitual criminal status.

560 P.2d 26, 29 (Alaska 1977).[4] In *State v. Ellis*, the Supreme Court of Nebraska overruled its prior precedent because it was convinced that it "should join the majority of jurisdictions in their interpretation of the habitual criminal statute" and held

that "the prior convictions, except the first conviction, must be for offenses committed after each preceding conviction, and all such prior convictions must precede the commission of the principal offense." 214 Neb. 172, 176, 333 N.W.2d 391, 394 (1983); *see also e.g., State v. Lohrbach*, 217 Kan. 588, 538 P.2d 678 (1975); *cf. State v. Henderson*, 283 So.2d 210 (La.1973) (legislature overruled prior court decision and brought state in line with majority rule). The Armed Career Criminal Act plainly draws on state habitual criminal statutes. The majority state court interpretation of those statutes is additional reason to interpret the Act as requiring that each counted offense occur after a preceding conviction.

The government,[5] relying chiefly on *United States v. Wicks*, 833 F.2d 192 (9th Cir.1987), *cert. denied*, — U.S. —, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988), urges a far more open ended interpretation of the Armed Career Criminal Act. In *Wicks*, a divided panel of the Court of Appeals for the Ninth Circuit confronted a situation almost identical to the one presented in this case. Two of Wicks' prior convictions "resulted from burglaries that occurred on the same night (though at different locations)." 833 F.2d at 193. The panel majority affirmed the conviction and the enhanced sentence in a per curiam opinion that is deeply flawed. The panel majority did not even note that there was a distinction between affirming the conviction and affirming the enhanced sentence, even though the Court of Appeals for the Ninth Circuit has followed this court's *Hawkins* decision and held that the 1984 amendment to the statute was simply a sentencing enhancement, not a separate offense. *See United States v. West*, 826 F.2d 909 (9th Cir.1987). Moreover, the *Wicks* majority held that the plain language of the statute "encompasses any person with three predicate convictions, whenever obtained." 833 F.2d at 192. It relied on *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), to

4. The *Carlson* rule was modified in part by statute when Alaska replaced its habitual criminal statute with a presumptive sentencing scheme. *See State v. Rastopsoff*, 659 P.2d 630 (Alaska App.1983).

5. The government is in this instance represented by a state prosecutor designated as a Special Assistant United States Attorney.

support the clarity of the term "convicted" in section 1202(a). There are two problems with this analysis. First, *Lewis* (a 1980 decision) held that the term "convicted" as used in defining a substantive element of the offense was unambiguous, not that the phrase "three previous convictions" as used in the sentence enhancement provision (which was added by amendment in 1984) is unambiguous. Second, the Solicitor General has explicitly stated that the statutory language added in 1984 is ambiguous. (Brief at 25, A. 185). The *Wicks* majority simply ignored this explicit statement by the Solicitor General. We see no reason for a court to give a broader interpretation to a criminal statute than urged by the Solicitor General. *But see United States v. Towne,* 680 F.Supp. 687, 692 (D.Vt.1988) (following *Wicks* and refusing to defer to the Solicitor General).

The *Wicks* majority's attempt to distinguish *Petty* is not ultimately persuasive. The Solicitor General argued in *Petty* that the enhancement provisions do not reach "multiple felony convictions arising out of a single criminal episode." (Brief at 30, A. 190). On remand, the Court of Appeals for the Eighth Circuit apparently accepted the Solicitor General's view that "the legislative history strongly supports the conclusion that the statute was intended to reach multiple criminal episodes that were distinct in time, not multiple felony convictions arising out of a single criminal episode." 828 F.2d at 3. The *Wicks* majority held that two burglaries committed on the same night in two different locations are "distinct in time" and therefore may be counted as multiple convictions. Thus the *Wicks* court would rely on small temporal distinctions without considering the underlying purpose of the statute; precisely the interpretation the Solicitor General suggested was improper.

The government does not urge that we go as far as rejecting the Solicitor General's position as did the *Wicks* majority. It argues for a standard that searches for "criminal episodes." This is the test applied by the Court of Appeals for the Eighth Circuit. "[I]t is the criminal episodes underlying the convictions, not the dates of convictions, that must be distinct to trigger the provisions of the ACCA." *United States v. Rush,* 840 F.2d 580, 581 (8th Cir.1988), cert. denied, — U.S. —, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988).

"Distinct in time," "criminal episodes," and "committed on occasions different from one another" are malleable standards. The first is more susceptible of applications inconsistent with the congressional purpose. But a "criminal episode" test is hardly more satisfactory than a temporal test. Determining whether two crimes were "committed on occasions different from one another" may often require an evidentiary hearing. Indeed this case illustrates the problem. We know that the two burglaries occurred some time between 10:45 P.M. and 7:00 A.M. We have no idea whether the interval was fifteen minutes or eight hours, or what Balascsak did in the interval. The "criminal episode" test does not avoid the practical difficulty of the necessity for an evidentiary hearing because the court would have to give factual content to the phrase. We could hardly attribute to Congress the intention of branding someone a career criminal offender who, for example, committed several separate felonies during a single drunken spree, with no time to sober up and reconsider between the separate incidents. The supporters of the legislation cannot have contemplated an interpretation of the statute which required for its application anything but a straightforward process. "Ordinarily, the proof will be in the form of certified court records from the state or federal courts where the prior convictions were obtained. In some circumstances, there may also be ancillary fingerprint records or other records of identification." S.Rep. No. 585 at 78. It was envisioned that the defendant would ordinarily only have three lines of attack on the proof of prior convictions: 1) that they are not admissible for reasons of form or notice; 2) that they do not accurately reflect the outcome; and 3) that they refer to another person. Moreover, one of the reasons for not requiring that the prior crimes be committed with a firearm was the "practical

impossibility, given the records' system, to go back and get into the facts of the other cases." *Armed Robbery and Burglary Prevention Act: Hearing on H.R. 6386 Before the Subcomm. on Crime of the House Comm. on the Judiciary*, 97th Cong., 2d Sess. 7 (1982) (statement of Sen. Specter). Under our interpretation of section 1202(a), the only additional evidence that is likely to be required is a certified copy of the second and third charging instruments so as to compare the dates of the convictions with the dates of the crimes. This is a much less cumbersome procedure than taking evidence and evaluating the precise temporal, spatial, or jurisprudential relationship between two crimes.

### E.

Since Balascsak was not twice previously convicted when he committed the burglaries on July 10–11 of which he was convicted, the judgment of sentence will be reversed and the case remanded for resentencing. The district court may exercise its discretion with respect to the government's motion to amend its notice so as to refer to other convictions. We make no comment on the defendant's process argument with respect to the government motion to amend its notice so as to refer to other convictions, because the issue is more properly raised before the district court on resentencing. The judges who join in this opinion do not disagree with the alternative ground for reversal relied on by Judge Becker in his concurring opinion.

BECKER, Circuit Judge, concurring.

I subscribe to the analysis of the statute and its history contained in Judge Greenberg's dissenting opinion, *infra*, and therefore I cannot join in Chief Judge Gibbons' opinion announcing the judgment of the court. I also agree with Judge Greenberg's conclusion and the conclusion of a number of Courts of Appeals that Congress intended that, to qualify as triggering offenses for the enhanced penalty, the three previous convictions must each have arisen from separate criminal episodes, but need not be separated by intervening convictions. *See United States v. Towne*, 870 F.2d 880 (2d Cir.1989) ("§ 924's references to 'convictions' pertains to single 'episodes' of felonious criminal activity that are distinct in time, rather than literal convictions"); *United States v. Herbert*, 860 F.2d 620, 622 (5th Cir.1988) (rejecting rule requiring intervening convictions between criminal episodes and adopting "separate distinct criminal transactions" as test); *United States v. Gillies*, 851 F.2d 492, 497 (1st Cir.) (robberies on different days in different drug stores sufficiently distinct), *cert. denied*, ⸺ U.S. ⸺, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *United States v. Rush*, 840 F.2d 580, 581 (8th Cir.) ("[I]t is the criminal episodes underlying the convictions, not the dates of conviction, that must be distinct to trigger the provisions of the ACCA."), *cert. denied*, ⸺ U.S. ⸺, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988); *United States v. Greene*, 810 F.2d 999, 1000 (11th Cir.1986) (separate buildings, separate felonies, different days sufficiently distinct).

However, I am sufficiently persuaded by Chief Judge Gibbons' account of the concern of the Congress that the statute ensnare only hard core repeat offenders that I believe that the separate criminal episode requirement must be read rigorously and that we must insist that the government prove convincingly that the crimes (and the episodes of which they were part) were truly separate.

Applying that rigorous standard here, I am unconvinced that the government has proven that the two Levittown burglaries, which constitute the second and third offenses, were part of separate criminal episodes. The government produced evidence that during the night of July 10–11, 1981, Balascsak committed two burglaries, one at a residence in Levittown, Pennsylvania, at about 10:45 p.m., and a second at a residence one block away from the first, some time between 11:00 p.m. and 7:00 a.m. the next morning. The government has not, in my view, established that two burglaries, occurring sometime between 10:45 p.m. and 7:00 a.m., are separate. For example, it is more than possible that the two burglaries

were committed within minutes of each other.[1] Therefore, I believe the government has failed to establish three burglaries that are distinct in time.

I concede my inability to establish a bright line, e.g., as to whether two days' or two weeks' hiatus is enough. But developing the law on a case-by-case basis and drawing lines depending on the facts is the stuff of judging and I would leave the development of the law to that process. Therefore, like Chief Judge Gibbons, I would vacate the judgment of sentence and remand for resentencing.[2] I thus concur in the judgment.

GREENBERG, Circuit Judge, dissenting.

On September 30, 1986, appellant Robert Balascsak, a convicted felon, was apprehended in possession of a shotgun. He subsequently pleaded guilty to a charge of possession of a firearm by a convicted felon in violation of the Armed Career Criminal Act (Act), 18 U.S.C. App. § 1202(a).

Section 1202(a) provides in pertinent part that a person "who has three previous convictions" for a felony burglary or robbery must receive a 15 year mandatory minimum term of imprisonment for possession of a firearm. Pursuant to this provision, the district court sentenced Balascsak to 15 years imprisonment based upon a conviction entered on May 21, 1981, for a burglary committed on November 30, 1980, and two convictions entered on February 22, 1982, for burglaries committed on the night of July 10–11, 1981. The latter burglaries were committed at two different homes in Levittown, Pennsylvania, a block apart; the first at 10:45 p.m., and the second between 11:00 p.m. and 7:00 a.m. These two crimes were charged in separate informations but were prosecuted together and resulted in identical concurrent sentences. It is evident from the above history that Balascsak had three previous convictions on September 30, 1986, since he had been convicted of three discrete burglaries committed at different times and places.

Nevertheless, Balascsak maintains that the convictions for the two burglaries of July 10–11, 1981, cannot be counted separately for the purposes of the "three previous convictions" language of section 1202(a), and that his sentence, grounded upon only two predicate convictions, must be vacated. The opinion announcing the judgment of the court agrees with Balascsak's contention that his sentence is objectionable. It reasons that although section 1202(a) simply provides that a defendant charged thereunder must have "three previous convictions," not only are three previous convictions required, but, as I understand its position, each conviction must precede the commission of the next crime for which conviction can be considered. Typescript at 23.

I believe that reading this extra requirement into section 1202(a) is unwarranted. In my view, the holdings of the five other courts of appeal which have considered the scope of the Act in analogous contexts should be adopted; specifically, that in enacting the statute, Congress intended that the enhanced penalty provision be applied where the convictions arise from separate criminal episodes or transactions, without regard to when the defendant is convicted of the respective predicate offenses. *See United States v. Herbert,* 860 F.2d 620 (5th Cir.1988); *United States v. Gillies,* 851 F.2d 492 (1st Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *United States v. Rush,* 840 F.2d 580 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988); *United States v. Wicks,* 833 F.2d 192 (9th Cir. 1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Greene,* 810 F.2d 999 (11th Cir.1986). *See also United States v. Towne,* 870 F.2d 880 (2d Cir.1989). Because Balascsak's two

---

1. The facts of *United States v. Wicks,* 833 F.2d 192 (9th Cir.1987), are very similar to this case. There, the two burglaries "occurred on the same night." 833 F.2d at 193. As I have stated above, I believe that if that is all the government has proven, it has not succeeded.

2. I do, however, join in Part C of Chief Judge Gibbons' opinion announcing the judgment of the court.

convictions for the July 10–11 burglaries meet this test, I respectfully dissent from Part D of the opinion announcing the judgment of the court.[1]

The opinion notes that in contrast to two other enhanced penalty provisions enacted by Congress, section 1202(a) does not expressly require that the predicate convictions be committed on occasions different from one another. 18 U.S.C. § 3575(e)(1) (1982) (repealed); 21 U.S.C. § 849(e)(1) (1982) (repealed). It goes on to recount that in *United States v. Petty*, 798 F.2d 1157 (8th Cir.1986), *vacated*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987), where the court of appeals upheld an enhanced sentence under section 1202(a) for a defendant who received six convictions for simultaneously robbing six victims in one restaurant, the Solicitor General's response to the defendant's petition for a writ of certiorari included a concession that the legislative history of section 1202(a) indicated that Congress did not intend the statute to apply more broadly than other federal enhanced penalty statutes. Typescript at 12–14. Its holding today, however, goes even further, interpreting section 1202(a) as having a much *narrower* scope than these other enhanced penalty provisions.[2]

It largely grounds its interpretation of section 1202(a) on legislative history, to which it turns after finding that the statute is ambiguous. It focuses first upon the language of earlier versions of what became section 1202(a). It notes that a previous version of the law provided that a person who committed an armed burglary or robbery "after having been twice convicted of a robbery or burglary" would receive the enhanced sentence, typescript at 16, and points out that under both this and a subsequent version of the law, only a person who had been convicted "of at least two offenses" *before* committing a third

robbery or burglary could be prosecuted. Typescript at 20. It further notes that federalism concerns prompted the final version of the law, which changed the underlying substantive offense from burglary or robbery to possession of a firearm, and that "[t]he switch from two priors to three priors appears to have been intended to account for the third crime which ... would have been prosecuted in federal court." Typescript at 22.

It concludes that because previous versions of the law required two convictions before the third robbery or burglary took place, and because the final version of the law was not intended to broaden the reach of the law but simply to alleviate federalism concerns, Balascsak's enhanced sentence must be vacated because he could not have been so sentenced under the previous drafts of the law, as he was not twice previously convicted when he committed the burglaries on July 10–11, 1981. The difficulty with this analysis is that it hinges upon the fortuity that Balascsak committed the two Levittown burglaries *after* he committed the November 1980 burglary. Had Balascsak committed the identical three burglaries in reverse chronological order, the analysis would lose much of its force. As the opinion itself acknowledges, typescript at 20, under the previous versions of section 1202(a) "the required relationship between the two priors themselves is not obvious." Nothing in the language of the previous versions of the statute upon which it relies suggests that Balascsak could not have received the enhanced penalty after committing the November 1980 burglary (had he been armed) if he had *previously* committed and been convicted of the two Levittown burglaries. In short, I find its reliance upon the language of prior drafts of the statute to be unpersuasive.[3]

The opinion announcing the judgment of the court also cites language in the title of

---

**1.** I join as to all other portions of the opinion.

**2.** Both 18 U.S.C. § 3575(e) and 21 U.S.C. § 849(e) provided in part that a defendant was a special offender for the purposes of those sections if the defendant had previously been convicted for two or more offenses committed "on occasions different from one another" and different from the offense being prosecuted, and had been imprisoned for one or more of the

prior convictions before committing the offense being prosecuted. These statutes, then, did not require a conviction upon the first predicate offense before the commission of the second predicate offense.

**3.** Moreover, although it emphasizes that under the prior versions of the law Balascsak would not have received an enhanced sentence following the July 10–11 burglaries, he did not receive

the Act itself as well as the legislative history characterizing the targeted class of defendants as "career criminals," "three time losers," and "repeat offenders" in support of its holding that each predicate conviction under section 1202(a) must precede the commission of the crime underlying the next predicate conviction. *See* typescript at 17–18. However, such characterizations are as equally applicable to those who commit three crimes without any intervening convictions as to those who go through the judicial and penal systems between crimes.[4]

The opinion further relies upon Dr. Peter Greenwood's testimony that in pinpointing high-rate criminals through the use of "total prior convictions," "[t]he fact that someone is being prosecuted for multiple counts does not have anything to do with rate of offending" and that "[t]ypically it has to do with one criminal episode rather than a long string of crimes." Typescript at 17. There is nothing in this testimony to support a requirement that conviction on one offense precede commission of the next offense in order for an offender to be characterized as "high-rate"; rather, the implication is that the two convictions merely must arise out of separate criminal episodes.

Even assuming *arguendo* that the language of the statute is ambiguous, the

legislative history of section 1202(a) does not justify its analysis of the legislative intent. I agree that certain portions of the legislative history indicate that Congress intended to penalize "revolving door" criminals who are "practically impossible to rehabilitate." However, much of the legislative history—as the opinion announcing the judgment of the court amply demonstrates—indicates that Congress was concerned with repeat offenders *regardless* of whether convictions and sentences punctuated their continuing criminal endeavors. Another court of appeals likewise has recognized that the legislative history of the Act can be cited in support of both of these legislative concerns. *See United States v. Herbert*, 860 F.2d at 622.[5]

The *Herbert* court characterized the legislative history of the Act as "ambiguous," as did counsel for Balascsak at oral argument. I disagree. The fact that portions of the legislative history indicate a congressional concern with persons who are not rehabilitated after being convicted on numerous occasions, while other portions indicate a concern with persons engaged in multiple criminal episodes without reference to any rehabilitative efforts, creates no ambiguity, but simply reveals that Congress was concerned with *both* types of recidivists, and therefore used the statutory language that it did. In any event, even assuming that there is some ambiguity in the legislative history, I think that

---

an enhanced sentence after those burglaries in this case either. Rather, the enhanced sentence was imposed after Balascsak committed the separate, subsequent offense of possession of a firearm. Here, the three predicate convictions preceded the commission of the fourth offense—possession of a firearm—just as in the prior versions of the law, the two predicate convictions were to have preceded commission of the third offense—armed robbery or burglary.

4. Indeed, under its position, the applicability of the enhancement provision of section 1202(a) will be even more dependent than it has previously thought to have been upon the ability of the criminal justice system to process cases so that there are convictions entered for prior offenses. Thus, the serial felon who is repeatedly arrested, but whose prosecution is delayed, will avoid the enhancement provisions. Surely a court ought not to reconstruct section 1202(a) and unnecessarily bring about such an undesirable consequence.

5. In the Solicitor General's brief in *Petty*, he indicated that section 1202(a) was ambiguous but that concession was in the context of the facts there involving six robberies in what was a single event. While a statute might be ambiguous in fringe applications, here it is being applied in a plainly applicable core situation. Obviously, the result I advance is in no way inconsistent with the Solicitor General's *Petty* position, as he contended there that "the legislators intended that prior convictions would be based on multiple criminal episodes that were distinct in time" and that the legislative history showed that there was no attempt "to count previous convictions on multiple felony counts arising from a single criminal episode as multiple 'previous convictions.'" There is simply no escape from the fact that when Balascsak was arrested with the shotgun, his record included three discrete unrelated offenses committed at three different places at three different times.

an objective reading supports the position that Congress intended to incapacitate persons who have repeatedly committed the particular crimes of robbery or burglary,[6] regardless of whether each predicate conviction preceded the commission of the next predicate offense. For instance, there are repeated statements in the legislative history that criminals are apprehended and convicted for fewer crimes than they actually commit. *See, e.g.,* S.Rep. No. 585, 97th Cong., 2d Sess. 3, 21, 72 (1982); S.Rep. No. 190, 98th Cong., 1st Sess. 1, 5 (1983). This suggests that Congress's overriding concern was with the fact that once a person has three previous convictions for the offenses specified in the Act, he or she is quite likely to be a member of that "small number of repeat offenders [who] commit a highly disproportionate amount of the violent crime plaguing America today" regardless of any intervening convictions. S.Rep. No. 585 at 20.

A recent amendment of the Armed Career Criminal Act buttresses my analysis of the legislative intent. Congress clarified the law to provide that a defendant must have three previous convictions for offenses "committed on occasions different from one another." Anti–Drug Abuse Act of 1988, Pub.L. 100–690, § 7056, 102 Stat. 4181, 4402 (1988). This amendment, expressly characterized by Congress as a "clarification" of existing law, *see id.,* "is entitled to substantial weight in determining the meaning of [the] earlier statute." *Barnes v. Cohen,* 749 F.2d 1009, 1015 (3d Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985) (citations omitted). The amendment, like the legislative history of the Act, suggests that Congress's concern in enacting the enhanced penalty provision at issue in this case was with those criminals involved in repeated criminal episodes, with or without intervening efforts at rehabilitation.

While I appreciate the concern that the law as passed might hypothetically be applied in circumstances which Congress did not anticipate, this is not a valid justification for rendering an interpretation contrary to the implications of both the statutory language and the legislative history. *See United States v. McClinton,* 815 F.2d 1242, 1245 (8th Cir.1987).[7] Moreover, for the purposes of the instant case it is unnecessary to delineate the precise contours of what constitutes separate criminal episodes or transactions or offenses committed on different occasions. It is sufficient to conclude that under the facts of this case the burglaries at issue were sufficiently distinct in time and place as to satisfy the applicable standard. I would so hold.

Circuit Judges A. LEON HIGGINBOTHAM, Jr., STAPLETON, HUTCHINSON and NYGAARD, join in this dissent.

---

6. 18 U.S.C. § 924(e)(1) replaced the requirement that the three convictions be for robbery or burglary with a requirement that they be for "a violent felony or a serious drug offense." This change, however, does nothing to alter our analysis.

7. Moreover, the interpretation of the law in the opinion announcing the judgment of the court

is plainly *underinclusive* under various hypothetical scenarios. For instance, I can hardly attribute to Congress an intent to *exclude* someone from the coverage of the Act who had engaged in a "Bonnie and Clyde" type spree over a long period of time, but had managed to evade apprehension.