**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael James BRADY, Defendant–
Appellant.**

**No. 91–1350.**

United States Court of Appeals,
Sixth Circuit.

Reargued Dec. 9, 1992.

Decided March 22, 1993.

Ross Parker (argued and briefed), Office of the U.S. Attorney, Detroit, MI, Eric M. Straus, Asst. U.S. Atty., U.S. Department

of Justice, Detroit, MI, for plaintiff-appellee.

Jill L. Price (argued and briefed), Jill L. Price, Detroit, MI, for defendant-appellant.

Before MERRITT, Chief Judge; KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges; and LIVELY, Senior Circuit Judge.

MILBURN, Circuit Judge.

We granted rehearing en banc in this criminal case, thereby vacating the prior decision of a panel of our court, in order to consider the question of whether two armed robberies of different victims at different locations committed approximately thirty minutes apart were "committed on occasions different from one another" within the meaning of the Armed Career Criminal Act ("Act"), 18 U.S.C. § 924(e)(1).[1] For the reasons that follow, we hold that the robberies in question were committed on different occasions and were separate and distinct criminal episodes. We therefore affirm the judgment of the district court.

## I.

The underlying facts are not in dispute and are taken largely from the panel's vacated decision.

On October 31, 1988, Kimberly Thurman reported a rape to the Detroit, Michigan, Police Department, describing the perpetrator and the .22 caliber revolver he was carrying. Later that day, two officers patrolling the area of the alleged assault observed a man who met the description given by Thurman and who was later identified as Michael Brady. As they approached Brady, they saw him take a dark object out of his pocket and toss it away.

One officer detained Brady while the other searched the area for the discarded item. The officer's search located a .22 caliber, blue steel revolver, the very type of weapon described in the rape report by Ms. Thurman.

The officers arrested Brady, and he was indicted in state court on charges of sexual assault. The state, however, was unable to prosecute Brady because the complainant did not appear. Federal authorities were then contacted about prosecuting Brady under 18 U.S.C. § 922(g) (1988), which prohibits a convicted felon from possessing a firearm. On February 8, 1989, a grand jury in the Eastern District of Michigan indicted Brady for violating 18 U.S.C. § 922(g).

Brady pled not guilty, and his case proceeded to trial on May 3, 1989. The next day, a jury found him guilty of the charge. On June 1, 1989, upon the government's motion, the district court held a hearing to determine whether Brady should be considered an armed career criminal under 18 U.S.C. § 924(e)(1).[2] Section 924(e)(1) increases the penalty for any person who violates § 922(g) and has three previous convictions of violent felonies or drug offenses. Finding that Brady was in this category, the district court sentenced him to 50 years imprisonment.

In a previous appeal, Brady challenged this sentence on the ground that the district court had taken a thirty-five-year upward departure from the fifteen-year maximum statutory enhancement under the erroneous belief that it had sentenced him within the applicable sentencing guideline range. Because the guidelines applicable at that time did not provide a range for the Armed Career Criminal enhancement, the government argued that the court was required by § 2X5.1 of the United States Sentencing Guidelines to apply the most

1. The panel decision was reported in the advance sheets at 960 F.2d 35, then withdrawn from publication in the bound edition of Federal Reporter, Second Series.

2. 18 U.S.C. § 924(e)(1) provides in relevant part: In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years.... (Emphasis added).

analogous offense guideline. The most analogous offense guideline was § 4B1.1's career offender status. Under this section, the upper limit of Brady's sentencing range would be life imprisonment, in which case the district court's fifty-year sentence would not have been improper. However, this court remanded for the district court to clarify whether the government's argument represented the court's reasoning in imposing the sentence and also to permit Brady to have the chance to argue the issue below, as the record did not reflect that he had been given that opportunity initially. *United States v. Brady*, 914 F.2d 258 (6th Cir.1990) (unpublished per curiam).

Upon remand, Brady argued that the Act no longer applied to him because the requisite three prior convictions no longer existed. Brady argued that, of the four convictions relied upon by the government, one had been vacated, and two of the remaining convictions counted as one crime for purposes of the Act. Brady based the latter claim on the fact that the two convictions were for two robberies that had occurred on the same night, December 22, 1976, within thirty minutes of each other, and with the same weapon. Brady insisted that because the two crimes and convictions arise from such closely related conduct, they should be counted as only one conviction for sentence-enhancement purposes.

In support of its request that defendant be adjudged an armed career criminal, the government proved three previous convictions for violent felonies, the latter two of which were for armed robberies committed on the night of December 22, 1976. The first armed robbery occurred at approximately 9:30 p.m. at the Mack Avenue Beauty Shop, where Brady, brandishing a sawed-off shotgun and accompanied by a female accomplice, robbed several women. Approximately thirty minutes later, Brady and the same accomplice entered the Club Continental Bar and ordered drinks. About fifteen minutes later, Brady drew his sawed-off shotgun, robbed the patrons

of the bar, and shot a female patron in the leg.

The district court agreed that the Act applied to Brady but imposed only the fifteen years required by statute. This appeal followed.

## II.

Defendant Brady presents a legal question concerning the interpretation of a statute, a matter we review de novo. *See United States v. Brown*, 915 F.2d 219, 223 (6th Cir.1990); *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988).

## A.

■ Defendant Brady initially argues that, by virtue of its legislative history, there is implicit in 18 U.S.C. § 924(e)(1) a requirement that a defendant must be *convicted* of one qualifying crime before he commits the next qualifying crime in order for the second conviction to be counted against him for purposes of the Armed Career Criminal Act. He contends that crimes that do not follow convictions, but instead follow only other crimes, cannot be counted as predicate offenses for the purposes of the Act. Stated another way, Brady argues that the statute is aimed at "three time losers," as distinguished from the perpetrators of three violent felonies, and that the "loser" term implies that the defendant must have lost a case by court conviction before his next crime can be counted as a predicate under the statute. Thus, Brady insists that only qualifying crimes next preceded by a conviction for some other qualifying crime may be counted as predicates under the Act.

The origin of this view is *United States v. Balascsak*, 873 F.2d 673 (3d Cir.1989) (en banc), a case in which the Third Circuit split evenly on the question, six members of the court holding that 18 U.S.C.App. § 1202(a),[3] a forerunner of 18 U.S.C.

---

**3.** In relevant part, 18 U.S.C.App. § 1202(a) read:
In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court ... for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....

§ 924(e)(1), was ambiguous and that its legislative history required the conclusion that a conviction for a qualifying crime must precede the next offense in the series if the conviction for the subsequent offense was to be considered a predicate for the purposes of § 1202(a). Five dissenters and one separately concurring judge took the position that the statute was not ambiguous and that an objective reading of the statute compelled the opposite conclusion, *i.e.*, that any three convictions for qualifying crimes, regardless of the order in which the offenses and their ensuing convictions occurred, could serve as predicates for the purposes of § 1202(a).

The matter was resolved by the Third Circuit in *United States v. Schoolcraft*, 879 F.2d 64 (3d Cir.) (per curiam), *cert. denied*, 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989), decided only two months after *Balascsak*. In *Schoolcraft*, a three-judge panel acknowledged the even split between the judges in *Balascsak* and, siding with the dissent, held that the statute was not ambiguous, that resort to its legislative history was not appropriate, and that "the statute does not require that the three predicate offenses be separated by intervening convictions." *Id.* at 73–74. The Third Circuit denied rehearing and rehearing en banc on July 18, 1989, and thus allowed *Schoolcraft* to tip the evenly balanced scales of *Balascsak* against the defendant's argument.

In addition to the Third Circuit, every other circuit, including this circuit, which has considered the issue, *viz.*, the First through the Eleventh, has rejected defendant Brady's argument. *United States v. Anderson*, 921 F.2d 335, 339–40 (1st Cir. 1990) (statute not ambiguous and does not "require that a defendant ... be convicted of one crime before committing the crime underlying a subsequent conviction"); *United States v. Mitchell*, 932 F.2d 1027, 1028 (2d Cir.1991) (per curiam) (statute not ambiguous and "does not require that a

defendant's three criminal acts be punctuated by intervening convictions"); *United States v. Mason*, 954 F.2d 219, 221–22 (4th Cir.) (holding § 924(e)(1) not ambiguous and that "the statute does not require a conviction for one predicate crime before the next predicate crime is committed"), *cert. denied*, —— U.S. ——, 112 S.Ct. 1979, 118 L.Ed.2d 578 (1992); *United States v. Herbert*, 860 F.2d 620, 622 (5th Cir.1988) (rejecting the argument that "three chronological successive convictions with intervening criminal episodes" are required), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989); *United States v. Hayes*, 951 F.2d 707, 709 (6th Cir.1991) ("The statute, however, imposes no conditions as to the timing of the convictions."), *cert. denied*, —— U.S. ——, 112 S.Ct. 1694, 118 L.Ed.2d 406 (1992); *United States v. Schieman*, 894 F.2d 909, 912 (7th Cir.) (adopting the reasoning of the dissent in *Balascsak*), *cert. denied*, 498 U.S. 856, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990); *United States v. Rush*, 840 F.2d 580, 581 (8th Cir.1988) (rejecting the argument that simultaneous convictions cannot qualify as predicates under the predecessor statute, 18 U.S.C.App. § 1202(a)); *United States v. Wicks*, 833 F.2d 192, 193–94 (9th Cir.1987) (per curiam) (rejecting the argument that simultaneous convictions cannot qualify as predicates under the predecessor statute, 18 U.S.C.App. § 1202(a)), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Bolton*, 905 F.2d 319, 323 (10th Cir.1990) (rejecting the argument that simultaneous convictions cannot qualify as predicates), *cert. denied*, 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991); *United States v. Greene*, 810 F.2d 999, 1000 (11th Cir.1986) (per curiam) (rejecting the argument that simultaneous convictions cannot qualify as predicates).

Thus, defendant Brady has no authority to support his position on this issue. We agree with our sister circuits that there is no ambiguity [4] in § 924(e)(1) on the ques-

---

**4.** Absent exceptional circumstances, judicial inquiry ends when the statute is unambiguous. *Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987); *Tennessee Valley Author-*

*ity v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning.").

tion of the timing of the predicate convictions, and, consistent with our prior holding in *United States v. Hayes*, we hold that § 924(e)(1) requires only three qualifying prior convictions without regard to the order in which those convictions were obtained.

### B.

■ Defendant Brady also argues that his armed robberies of December 22, 1976, should count only as one predicate offense because they represent a single, continuous crime spree rather than two separate offenses. Brady focuses on the thirty to forty-five minute time period that separated the two offenses and argues that close proximity in time merges otherwise distinct offenses for purposes of determining predicates under § 924(e)(1).

In *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir.1991), we held "that § 924(e) enhanced punishment for multiple criminal episodes that were distinct in time," and defined an episode as

> an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration.

*Id.* Defendant Brady cites no authority in which a court of appeals has held that mere proximity in time between two offenses occurring at different places and involving different victims operated to merge those offenses for purposes of § 924(e)(1).[5] On the other hand, three circuits have held that distinctions in time, place, and victim compelled the conclusion that the events were separate criminal episodes, and another circuit has held that distinction in time alone was sufficient to separate criminal episodes occurring on the same date, at the same place, and against the same victim.

In *United States v. Schieman*, 894 F.2d 909, 913 (7th Cir.), *cert. denied*, 498 U.S. 856, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990), the Seventh Circuit adopted the distinct criminal episode test and held that a defendant who burglarized a shop and shortly thereafter assaulted the police officer who pursued him was guilty of two distinct criminal episodes for the purposes of § 924(e)(1). Rejecting the contention that mere proximity in time should suffice to amalgamate the incidents into a single crime spree, the court concluded that

> [o]nce the original crime is complete, there is no principled way to distinguish between an attack in response to an investigation commenced within ten minutes of the burglary and an attack in response to an investigation commenced a day after the burglary.

*Id.* In so holding, the Seventh Circuit weighed more heavily the facts that the defendant had successfully completed his burglary and had safely escaped from the premises, thus concluding the burglary episode before he undertook an assault on the officer investigating the case.

In *United States v. Tisdale*, 921 F.2d 1095, 1099 (10th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991), the Tenth Circuit decided that three burglaries committed "successfully" at different stores within the same shopping mall during the same evening were separate criminal episodes for purposes of § 924(e)(1). After each burglary, the defendant was free to desist and leave. The fact that all three burglaries occurred on the same night was unimportant in the analysis.

An even more striking set of facts arose in *United States v. Washington*, 898 F.2d 439, 441–42 (5th Cir.), *cert. denied*, 498 U.S. 842, 111 S.Ct. 122, 112 L.Ed.2d 91

---

5. *United States v. Petty*, 798 F.2d 1157 (8th Cir. 1986), *vacated*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 *on remand*, 828 F.2d 2 (8th Cir. 1987), *cert. denied*, 486 U.S. 1057, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988), is not to the contrary. In *Petty*, the Eighth Circuit held that a defendant's six convictions for six armed robberies committed simultaneously could count as only one predicate offense for purposes of the enhanced penalty of 18 U.S.C.App. § 1202(a) (repealed 1986), the predecessor statute of 18 U.S.C. § 924(e). "*Petty* expressly recognized the distinction, however, between convictions for simultaneous robberies and convictions for robberies distinct in time." *United States v. Wicks*, 833 F.2d 192, 194 (9th Cir.1987) (per curiam), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988).

(1990), wherein the Fifth Circuit held that successive robberies of the same clerk at the same convenience store by the same defendant were separate criminal episodes for the purposes of the statute despite the fact that the robberies occurred only two hours apart. Because the defendant had completed the first offense and safely escaped, the court refused to consider the second offense a part of a single crime spree.

The Ninth Circuit has decided two cases in which it held that offenses committed during the same night but at different locations were to be counted as separate criminal episodes for purposes of the statute. In *United States v. Wicks*, 833 F.2d 192, 193 (9th Cir.1987) (per curiam), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988), the court counted as separate criminal episodes two burglaries committed on the same night at different locations for the purpose of punishing the defendant under 18 U.S.C.App. § 1202(a), the predecessor statute to 18 U.S.C. § 924(e)(1). In *United States v. Antonie*, 953 F.2d 496, 499 (9th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 138, 121 L.Ed.2d 91 (1992), the court held that two armed robberies committed on the same evening approximately forty minutes apart should be separately counted as predicate offenses because they occurred at different times, at different places, and involved different victims.

In the present case, defendant Brady committed crimes against different victims at different places and at distinctly different times. Applying the foregoing authorities as well as this court's definition of an episode in *Hughes*, we hold that defendant Brady's two armed robberies were correctly counted as separate predicate offenses for the purpose of sentencing him under the provisions of 18 U.S.C. § 924(e)(1).

Defendant's reliance on *United States v. Pedigo*, 879 F.2d 1315, 1318 (6th Cir.1989), is misplaced. Brady argues that this court may have remanded that case for further sentencing proceedings because it found that Pedigo's three predicate burglary convictions arose from only one criminal epi-

sode. In fact, we remanded the case because we could not determine from the trial record "whether more than two criminal episodes lay behind the prior convictions of Pedigo listed in the indictment as a matter of substantive proof at trial." *Id.* at 1318. Accordingly, we instructed the district court on remand to determine whether the predicate convictions involved three separate criminal episodes. *Id.* at 1320. *Pedigo* is merely a case in which we decided that the trial record needed clarification. We did not decide that Pedigo's burglaries were a single episode.

Defendant Brady also relies on our decision in *United States v. Taylor*, 882 F.2d 1018, 1029 (6th Cir.1989), *cert. denied*, 496 U.S. 907, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990), in which we held that "a court applying § 924(e) can[not] count as two predicate felony convictions two convictions which, as the record discloses, relate only to a single criminal act." In *Taylor* the record showed that the defendant's four burglary convictions resulted from no more than two actual burglaries. Thus, we merely forbade the "double-counting of multiple convictions arising from a single episode of criminal conduct." *Id.* at 1029. We did not, however, establish any rule concerning the merger of separate offenses committed in close proximity to one another.

Consistent with the holdings of our sister circuits, we believe that offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be counted as separate predicate convictions under § 924(e)(1). As earlier discussed, while defendant Brady sat at the Club Continental Bar with his concealed shotgun, he could have decided that the one robbery he had committed was enough for the evening. Instead, he decided to rob again, and, after robbing the patrons of the bar, he shot one female patron in the leg. Thus, seen from either an objective or subjective point of view, defendant Brady's crimes were separate

episodes. Therefore, he was properly taxed with both at his sentencing.

### C.

Finally, defendant Brady invites us to deviate from the course taken by all the federal circuits that have considered the first issue he has raised in this appeal and to adopt his position because a number of states require that a defendant be either sentenced or convicted for each prior offense before he commits his next qualifying offense in the series leading toward his conviction as a habitual criminal. As Brady concedes in his brief, we are not bound by the decisions of various state courts or legislatures. We are, however, bound by the unambiguous language of the statute, which, as we have previously pointed out, "imposes no conditions as to the timing of the convictions." *United States v. Hayes*, 951 F.2d at 709.

### III.

Because we reject the argument that a defendant's convictions must occur in any particular order, and because we hold that offenses committed at different times and places against different victims are separate and distinct criminal episodes and thus qualify as crimes "committed on occasions different from one another" within the meaning of 18 U.S.C. § 924(e)(1), we AFFIRM the judgment of the district court.

BOYCE F. MARTIN, JR., Circuit Judge, dissenting.

I concur in the dissent of Judge Jones. I cannot join in an opinion which states, "we believe that offenses committed by a defendant at different times and places and against different victims, although commit-

ted within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be counted as separate predicate convictions under § 924(e)(1)." *United States v. Brady*, 914 F.2d 258 (6th Cir.1993) (en banc). If this is what Congress intended, this is what Congress should have said. Because Congress did not say clearly that was the statutory intent, I cannot join in the conclusion that there is no ambiguity in section 924(e)(1).

NATHANIEL R. JONES, Circuit Judge, dissenting.

Career criminals. Habitual violent offenders. Repeat offenders. Recidivists. In recognizing that innocent people become unfortunate victims of the truly merciless members of our society; in attempting to balance the dual concerns of retribution and rehabilitation of the seemingly unrepentant individuals of our communities; and in trying to grapple with the immeasurable scarring and enduring pain created by a small, yet notorious clan of criminals; we, as a society, beckoned Congress to establish and the courts to implement drastic solutions for dealing with the social defiants.

Congress, in realizing that we, as a society, are being engulfed by the problems created by these career offenders, has acted. With the Armed Career Criminal Act ("ACCA" or "Act"), 18 U.S.C. § 924(e) (1988 & Supp. III 1991), Congress enacted legislation which imposes a mandatory minimum sentence for recidivists.[1]

Unfortunately, in their otherwise laudable zeal to implement these stiff penalties, the courts, including the Sixth Circuit, have gone well beyond the underlying rationale which Congress had in establishing the

---

1. The ACCA dramatically enlarges the penalty for any person who violates 18 U.S.C. § 922(g) (1988) and has three previous convictions of violent felonies or serious drug offenses by imposing a fifteen-year mandatory minimum sentence. It states, in pertinent part:

(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on

occasions different from one another, such person shall be fined not more that $25,000 and imprisoned not less that fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

ACCA. In this case, as our fellow circuits have previously done, the majority has expanded the scope of the ACCA to treat as separate and distinct criminal episodes those actions which are part of one continuous criminal episode or crime spree. Because this expansive interpretation and implementation of the ACCA is at odds with the language and underlying policy of the ACCA, I respectfully dissent.

## I.

In a curious, yet disturbing way, the federal judiciary has come full circle in dealing with career criminals in a relatively short time period. Perhaps because of our genuine eagerness to place incorrigible repeat offenders behind bars, many courts have refused to adhere to and respect the parameters Congress has established.

In a predecessor statute to the present version of the ACCA, Congress established enhanced punishment for armed career criminals. Under 18 U.S.C.App. § 1202(a)(1) (1982) (repealed 1986), any person who had three previous convictions by any court for robbery or burglary, or both, and subsequently violated 18 U.S.C.App. § 1201 (1982) (repealed 1986) would be sentenced to a mandatory minimum sentence of fifteen years.[2, 3] Unlike other enhanced penalty provisions enacted by Congress which provided that prior convictions must

be for offenses "committed on occasions different from one another," see .18 U.S.C. § 3575(e)(1) (1982) (repealed effective Nov. 1, 1987) (dangerous special offender); 21 U.S.C. § 849(e)(1) (1982) (repealed effective Nov. 1, 1987) (dangerous special drug offender), there was no express requirement in Section 1202(a) that the three convictions be separate in time.

Although there was no explicit reference to the requirement that convictions be separate in time, the legislative history of Section 1202(a) provides substantial clues. Before the 1984 amendments to Section 1202(a) were added, Senator Arlen Specter of Pennsylvania drafted a bill which created federal jurisdiction over state-law armed burglary and armed robbery offenses committed by career criminals. Although Senator Specter's bill went through several revisions, a general policy concept remained constant. That general policy was summarized in a report based on an early version of the bill. The report stated that the bill

> is *very narrowly* aimed at the *hard core of career criminals with long records* for robbery and burglary offenses who have now "graduated" to the point of dangerousness and recklessness that they are using firearms to commit further robberies and burglaries. Accord-

(Emphasis added.)

---

**2.** 18 U.S.C.App. § 1202(a)(1) stated, in part:

Any person who—(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, ... and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. *In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years,* and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

**3.** The present version of the ACCA, 18 U.S.C. 924(e), has a storied past. The first version was the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, § 1202(a), 82 Stat. 197, 236. That version was amended by the Armed Career Criminal's Act of 1984, Pub.L. No. 98–473, § 1802, 98 Stat.1976, 1837, 2185, and was later repealed by the Firearms Owners' Protection Act of 1986, Pub.L. No. 99–308, § 104(a)(4), 100 Stat. 449, 458–59. The Firearms Owners' Protection Act of 1986 also changed the codification of the ACCA to 18 U.S.C. § 924(e). 18 U.S.C. 924(e)(1), the provision relevant to this case, was subsequently amended by the Career Criminals Amendment Act of 1986, Pub.L. No. 99–570, § 924(e)(1), 100 Stat. 3207, 3207–39 to 3207–40, and by the Minor and Technical Criminal Law Amendments Act of 1988, Pub.L. No. 100–690, § 7056, 102 Stat. 4181, 4395, 4402.

ingly, the robbery provisions of S. 1688 [the early version of Senator Specter's bill] only apply to a very small portion of the total robberies occurring in the United States. The important feature of the bill is that it focuses on the *very worst robberies, by the very worst offenders with the worst records.*

*United States v. Balascsak,* 873 F.2d 673, 680 (3d Cir.1989) (*en banc*) (quoting S.Rep. No. 585, 97th Cong., 2d Sess. 62–63 (1982) [hereinafter S.Rep. No. 585]) (emphasis added). "The title is meant to suggest that the Bill have *limited scope* in that it only deals with *career* criminals and only those *career* criminals who are armed." *Id.* (quoting S.Rep. No. 585 at 69) (emphasis added).

That version of the bill originally called for life imprisonment. The justification for such a harsh penalty was as follows:

[T]he Act was so *narrowly drawn* to apply to only the *most repetitive and violent and dangerous offender,* that a life sentence would be justified in any case that could reasonably be expected to be prosecuted under the Act. Indeed, it is the underlying premise of the Act that at a certain point, a *career* criminal becomes practically impossible to rehabilitate.

\*    \*    \*    \*    \*    \*

[T]he idea was that once the *career* criminal had become a *"three time loser,"* the only reasonable disposition is permanent incarceration.

*Id.* (quoting S.Rep. No. 585 at 76–77) (emphasis added).

In addition to the Senate report, Stephen S. Trott, Assistant Attorney General, Criminal Division, explained the policy behind the Act as follows:

These are people who have demonstrated, by virtue of their definition, that locking them up and letting them go doesn't do any good. They go on again, you lock them up, you let them go, it doesn't do any good, they are back for a third time. At that juncture, we should say, "That's it; time out; it is all over. We, as responsible people, will never give you the opportunity to do this again."

*United States v. Towne,* 870 F.2d 880, 891 (2d Cir.) (quoting *Armed Career Criminal Act: Hearing before the Subcomm. on Crime of the House Comm. on the Judiciary,* 98th Cong., 2d Sess. 47, 64 (1984) (testimony of Assistant Attorney General Stephen S. Trott)), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989).

Trott's testimony and Congress' comments plainly presuppose that the Act is intended to apply to only incorrigible, habitual criminals or, as the Second Circuit in *Towne* stated, to "recidivists ... who have engaged in violent criminal activity on at least three separate occasions, and not individuals who happen to acquire three convictions as a result of a single criminal episode." *Id.* at 891.

Soon after Section 1202(a)(1) was enacted, the Eighth Circuit read out any implied requirement that the crimes had to be committed on different occasions. Despite the important history and powerful language which undergirds Section 1202(a), the Eighth Circuit, in *United States v. Petty,* 798 F.2d 1157 (8th Cir.1986), *vacated and remanded,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987), *rev'd and remanded,* 828 F.2d 2 (1987), *cert. denied,* 486 U.S. 1057, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988), applied the statute quite literally. That circuit affirmed an enhanced sentence where the prior convictions relied upon included convictions on six counts of armed robbery, even though the six victims were located in one restaurant and were robbed "simultaneously." *Id.* at 1159–60. In a brief one-paragraph opinion, the Supreme Court vacated the Eighth Circuit's holding, suggesting that it reconsider in light of the argument of the Solicitor General in his brief to the Court. *Petty v. United States,* 481 U.S. 1034, 1034, 107 S.Ct. 1968, 1969, 95 L.Ed.2d 810 (1987). The Solicitor General argued that the legislative history of the Act "strongly support[ed] the conclusion that the statute was intended to reach multiple criminal episodes that were distinct in time, not multiple felony convictions arising out of a single criminal episode."

*United States v. Petty*, 828 F.2d 2, 3 (8th Cir.1987).

As a result of the Supreme Court's admonishment and the Solicitor General's concession of error, the Eighth Circuit revisited *Petty* and reversed its earlier decision. *Id.*

In the aftermath of *Petty*, the interpretation of Section 1202(a) was different. For example, in *Balascsak*, the Third Circuit read into Section 1202(a) a requirement that there must be intervening convictions between each offense before Section 1202(a) would be applicable. 873 F.2d at 681–82. *Cf. United States v. Wicks*, 833 F.2d 192, 192–94 (9th Cir.1987), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988) (majority of panel held that the plain language of the statute "encompasses any person with three predicate convictions, whenever obtained"; majority also implicitly held that statute applied in this case because the two crimes were distinct in time).

In 1988, Congress added the phrase—"committed on occasions different from one another"—to the ACCA. *See* Minor and Technical Criminal Law Amendments Act of 1988, Pub.L. No. 100–690, § 7056, 102 Stat. 4181, 4395, 4402. Prior to its passage, sectional analysis of the proposed Minor and Technical Criminal Law Amendments Act provided the following explication for that phrase:

> Section 151 [the proposed phrase] would clarify the armed career criminal statute, 18 U.S.C. 924(e), by inserting language describing the requisite type of prior convictions that trigger the law's mandatory minimum sentencing provisions. Presently, section 924(e) provides that a person found in possession of a firearm shall be sentenced to a mandatory minimum prison term of not less than fifteen years if such person "has three previous convictions ... for a violent felony or a serious drug offense" (as those terms are defined in the law). Recently, a court of appeals held that the "three previous convictions" requirement was met by a conviction on six counts for armed robbery in New York State in which the defendant was convicted for having robbed six different people at a restaurant at the same time. *United States v. Petty*, 798 F.2d 1157 (8th Cir. 1986).

On petition for a writ of *certiorari*, the Solicitor General on behalf of the United States confessed error, pointing out that, while the armed career criminal statute lacked descriptive language found in other similar statutes to the effect that the convictions be for "offenses committed on occasions different from one another", see 18 U.S.C. 3575(e)(1), 21 U.S.C. 849(e)(1), the legislative history nevertheless made clear that a similar interpretation was intended here. The Supreme Court reversed and remanded the case to the court of appeals for consideration of the Solicitor General's views. [481] U.S. [1034, 107 S.Ct. 1968, 95 L.Ed.2d 810] (1987).

> *The proposed amendment would clarify the armed career criminal statute to reflect the Solicitor General's construction and to bring the statute in conformity with the other enhanced penalty provisions cited above. Under the amendment, the three previous convictions would have to be for offenses "committed on occasions different from one another". Thus, a single multi-count conviction could still qualify where the counts related to crimes committed on different occasions, but a robbery of multiple victims simultaneously (as in* Petty) *would count as only one conviction. This interpretation plainly expresses the concept of what is meant by a "career criminal", that is, a person who over the course of time commits three or more of the enumerated kinds of felonies and is convicted therefor. It is appropriate to clarify the statute in this regard, both to avoid future litigation and to insure that its rigorous sentencing provisions apply only as intended in cases meriting such strict punishment.*

134 Cong.Rec. 13,782–83 (1988).

The sectional analysis of the phrase shows the outer reaches of the ACCA as

Congress intended. On one end, there is *Petty*. *Petty* establishes, at a minimum, that simultaneous acts should be treated as one conviction for the purposes of the ACCA. On the other end, Congress, through its amendment and accompanying legislative history, establishes that the rationale *Balascsak* is grounded on is probably no longer good law. That is to say, the phrase "committed on occasions different from one another" means that there need not be an intervening conviction between offenses before the ACCA becomes applicable.[4]

Congress did not explicitly instruct the courts on how to deal with the large, undefined, murky middle ground that rests between *Balascsak* and *Petty*, however. As a result, the courts have, unfortunately, moved alarmingly close to the original Eighth Circuit position announced in *Petty*. Seemingly, the courts have allowed a defendant to be subject to the ACCA in every situation except where there is a true "simultaneous" criminal episode. In coming back to the original *Petty* rationale, the courts have made the holding in *Petty* so narrow that it now exists only as a nebulous concept. *Petty*, as it relates to temporal concepts, remains good law only where a fortuitous defendant commits his crimes at the same precise time, *see United States v. Montgomery*, 819 F.2d 847, 850 n. 2 (8th Cir.1987) (government conceded that a single incident involving simultaneous robberies of two individuals constituted a single criminal conviction). Any lapse at all, even if for a minimal amount of time, will hurtle the defendant into the clutches of the ACCA. Regrettably, courts, including this court today, have done this despite legislative history relating to both the current and previous ACCA statutes, the Solicitor General's comments in *Petty*, and the underlying meaning in *Petty* to the contrary. The federal judiciary has come full circle.

## II.

The problem with the majority's adoption of a "near-*Petty*" rationale is two-fold: 1)

it blurs the concept of "committed on occasions different from one another"; and 2) it extinguishes the concept that the only defendants to be subject to the ACCA are the *career* criminal offenders.

## A.

With the majority's opinion today, we have forsaken the proper understanding of what it means to commit offenses "on occasions different from each other." As stated earlier, we now know that the phrase can only be understood within the parameters the sectional analysis of the phrase provided. In trying to locate where within those parameters the phrase is best understood, the courts tinker with the concepts to show that the case before them does not involve truly "simultaneous" offenses. The courts have become masterful in using phrases and concepts such as the acts committed by the defendant were distinct in time, the defendant had successfully completed the first crime and was free to leave, there are different victims, and the locations are different, to explain why the case before them is different from the simultaneous acts in *Petty*. *See, e.g., Wicks,* 833 F.2d at 194; *United States v. Tisdale,* 921 F.2d 1095, 1099 (10th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991); *United States v. Schieman,* 894 F.2d 909, 913 (7th Cir.), *cert. denied,* 498 U.S. 856, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990); *United States v. Antonie,* 953 F.2d 496, 497–99 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 138, 121 L.Ed.2d 91 (1992). The majority does this as well in this case by holding, as a broad rule, that "we believe that offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be counted as separate predicate convictions under

---

**4.** As the majority opinion ably points out, every circuit, including the Third Circuit, has declined

to accept and apply the *Balascsak* rationale.

§ 924(e)(1)." *United States v. Brady*, 914 F.2d 258 (6th Cir.1993) (*en banc*).

Unfortunately, in mastering these different phrases and concepts, the courts have misconstrued the reasonable test *Petty* and Congress implicitly established. The test is not simultaneous versus non-simultaneous; same place versus different place; or same victim versus different victim. Furthermore, the test is not to merely look at those factors in total and conclude, as the majority has in this case, that all defendants whose actions fit those factors are thereby subject to the ACCA. There is no policy justification supporting that type of artificial line-drawing. In fact, the legislative history of the ACCA, explored earlier, refutes that type of simplistic line-drawing.

Rather, the general test that *Petty* and Congress established is whether two or more acts can be best capsuled as being one occasion of activity or different occasions of activity. Under this test, the important concepts are the defendant's premeditation to commit several crimes at once and· general continuity of the defendant's actions. *Cf. Schieman*, 894 F.2d at 915 (Ripple, J., concurring in part and dissenting in part). Furthermore, under this test, a defendant who, for whatever reason, did not commit the offenses simultaneously is not automatically lumped with the truly recidivist criminals. Finally, it more logically treats defendants who commit acts as part of one continuous activity or crime spree the same as the defendant who commits the acts simultaneously.[5]

With this test, the policy objective of subjecting a particular type of criminal to enhanced punishment is met. Through this test, there is a much greater likelihood of applying the ACCA to the *career* criminal.

It will ensnare those who, over time, commit crimes which are random and disjunctive while not capturing those who commit crimes over a short time period and in a continuous manner.

If the test is not as I have described it, it strains logic to not subject one defendant to the ACCA because one's acts are simultaneous and subject another defendant to the ACCA when one's acts are simultaneous minus one second, or five seconds, or one hour, etc. Similarly, it strains logic to hold that one defendant would be subject to the ACCA merely because the crimes were committed at two locations while another defendant would not be subject to the ACCA because the acts were committed at one location.

### B.

As stated earlier, the Armed *Career* Criminal Act, as with its predecessor, is aimed at a "three-time loser," *see* S.Rep. No. 585 at 76–77, and the "recidivists ... who have engaged in violent criminal activity on at least three separate occasions, and not individuals who happen to acquire three convictions as a result of a single criminal episode," *see Towne*, 870 F.2d at 891. Therefore, the majority's reading out of the concept of *career* in the general philosophy behind (not to mention the title of) the Armed *Career* Criminal Act is equally troubling.

The disappearance of the concept of *career* presents itself forcefully in the case before us. In support of its request that Brady be treated as an armed *career* criminal, the government relied on two prior convictions which happened on the same night. More specifically, they occurred within no more than one hour of each oth-

---

**5.** But for a temporal distinction, the "crime spree" defendant and the "simultaneous" defendant can be strikingly similar. Both may have an established predetermined course of action. The intent to commit the crimes in either situation may be identical. In *Petty*, for example, the defendant may have predetermined that he would rob six restaurant patrons. In the same way, Brady could have contemplated robbing six customers at two locations and that he would do them back to back.

In addition, with both a crime spree and a simultaneous act, there is a continuity of activity. Either the act is presently occurring or there is movement or activity that would tie one act of violence with the next act of violence. Any pause in the actual acts of violence in the crime spree situation are merely *lulls* between the commissions of crimes to allow the defendant an opportunity to do certain things like reload weapons or plot final strategies.

Finally, both are committed over a relatively short time period.

er. The first robbery occurred at approximately 9:30 p.m. in a beauty salon. The second robbery happened less than forty-five minutes later in a bar. Furthermore, Brady used the same weapon and had the same accomplice.

Notwithstanding the fact that the events happened as part of a continuous course of criminal activity, or a "crime spree," the majority treats Brady's actions as two separate crimes. In essence, the majority holds that Brady has had a "career" in less than an hour. It misses logic to hold that a "career" can comprise the events of a single evening, or more aptly put, less than one hour, and thereby subject him to fifteen years of incarceration.[6]

Other cases show the absurdity of having events of a single night, and in many cases, a minuscule portion of that night, somehow equal a "career." For example, in *United States v. Summers*, No. 92–30075, 1992 WL 313140, at *1 (9th Cir. Oct. 27, 1992), the defendant committed burglaries of four separate recreational cabins which defendant contended occurred one right after another on the same day. In *United States v. Vance*, 961 F.2d 217 (9th Cir.1992) (WESTLAW, Allfeds database), *cert. denied*, — U.S. —, 113 S.Ct. 335, 121 L.Ed.2d 252 (1992), the defendant and a companion committed three robberies on the same day. The facts are as follows:

> At 10:10 p.m. they robbed two people sitting in a parked car in University City, California. Between 11:15 and 11:30 p.m. they robbed three people walking through a hotel parking lot in Mission Valley, California, and were chased by a security guard. Between 11:15 and midnight they robbed two people in another hotel parking lot approximately 0.3 miles away from the first parking lot.

*Id.* In *Tisdale*, 921 F.2d at 1099, the defendant committed three burglaries "successively" at three different stores in the same mall during the same evening. In *Antonie*, 953 F.2d at 497–98, the defendant committed armed robberies about forty minutes apart against different victims and at different locations.

In each of these cases, the appellate courts held that the offenses were sufficiently distinct, thereby warranting the application of the ACCA. Those courts implied, just as the majority has held in this case, a "career" subjecting a defendant to fifteen years in prison can be had for actions which occur in one brief time span that may have been one continuous crime spree.

The potential absurdity of having one night's worth of actions conclusively and definitely considered a "career" is made poignantly clear by the potential way the ACCA can be applied. The Ninth Circuit noted an example created by a district court which shows the potential absurdity of calling one evening's endeavors a "career":

> The district court conjectured that a heavily intoxicated 22-year-old man, with no criminal record, could commit three robberies in one evening. Twenty years later, after raising a family and encountering no other trouble with the law, this man could be arrested while hunting and convicted as a felon in possession of a firearm. If sentenced under the Armed Career Criminal Act, he would be subject to a fifteen-year enhanced sentence.

*Antonie*, 953 F.2d at 499 (citing *United States v. McClinton*, 815 F.2d 1242, 1245 (8th Cir.1987)).

---

**6.** "Career" has been defined as "an occupation or profession followed as a *life's* work." Merriam–Webster Dictionary 117 (1974) (emphasis added). That definition implies a lengthy, time-consuming undertaking which consumes a good portion of one's life. In this context, any use of the word "career" to signify any short period of time is probably being so used in a joking way only to highlight a particular grand accomplishment. For example, when it is mentioned in sports (e.g., "that person had a career night") because of some grand accomplishment (e.g., Francisco Cabrera propelling the Atlanta Braves to the World Series in 1992 by driving in the tying and winning runs with the bases loaded and two outs in the bottom of the ninth inning), it is not expected that, based on one night's performance, she or he will be placed in some shrine that honors "career" or "lifetime" achievers (e.g., the Baseball Hall of Fame).

### III.

Having set out the problem with the majority's holding in this case, as well as other courts in numerous other cases, the issue becomes whether there is any way to determine whether a defendant's actions were committed on different occasions such that those actions should be treated as establishing a "career." Without question, it is far easier, as a matter of exercise, to follow the majority's "near-*Petty*" test because it allows all but simultaneous acts to be counted as separate acts. Merely being easy to implement does not end the inquiry, however. Therefore, I would propose following the test I described earlier. Under this test, merely having different victims, different locations, and different times would only begin the inquiry. In addition to those questions, the test would include the continuity of the defendant's actions and to the extent possible, a determination of the predisposition of the defendant. The courts ought to be able to look at the underlying facts of a case and determine whether a defendant's actions of a single evening warrant the application of the ACCA. If those actions are part of the continuous crime spree, as they were in this case, the actions ought to be treated as one criminal episode for purposes of the Act. In most, if not all instances, where multiple convictions arise out of a continuous course of criminal activity, or a crime spree, only one separate and distinct criminal episode has occurred for the purposes of the Act.

I understand that this may pose a slightly more difficult line-drawing task for this court than other circuits have been willing to undertake, but, given what I believe to be Congress' intent in enacting the ACCA, I strongly urge that the burden is one we must shoulder. *Cf. Schieman*, 894 F.2d at 915 (Ripple, J., concurring in part and dissenting in part) (if the court implemented test similar to the test suggested above,

court's task would not be impossible). Congress sought to target *career* criminals with this statute, and I cannot agree with the majority and our sister circuits that a career logically comprises the events of a single evening.[7]

The courts should not be so quick to impose such a drastic penalty on defendants who essentially have one bad night. While it is undisputed that a defendant should be punished for each conviction, Congress determined that no less than three convictions, "committed on occasions different from one another," are necessary to evidence that a wrongdoer is a career criminal deserving of fifteen additional years of incarceration. We should not join the other circuits in buckling under to the societal pressures and concerns by making that phrase "committed on occasions different from one another" and the term "career" utterly meaningless.

---

**7.** Another plausible way of dealing with how to determine whether a criminal is a "career" criminal offender is to establish, via new legislation, a scheme which balances numerous factors including a defendant's propensity for crime, the time lapse between the defendant's prior convictions and the conviction which would subject her/him to the ACCA, and the types of crimes. *See, e.g.,* James E. Hooper, Note, *Bright Lines, Dark Deeds: Counting Convictions Under the Armed Career Criminal Act,* 89 Mich.L.Rev.1951 (1991).