NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0169n.06

No. 14-5490

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 04, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| STEEVE ALEXIS, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |

___

**BEFORE: GIBBONS and STRANCH, Circuit Judges; REEVES, District Judge.***

**PAMELA L. REEVES, District Judge.** In December 2013, Steeve Alexis pled guilty to illegally possessing a firearm in violation of 18 U.S.C. § 922(g)(1). Under ordinary circumstances, the United States Sentencing Guidelines range for Alexis would have been 70-87 months' imprisonment; however, because Alexis had three previous serious drug convictions, the Presentence Investigation Report designated him an armed career criminal with a guidelines range of 188-235 months.

Alexis objected to the classification. Because the three previous serious drug convictions were contained in a single judgment and received concurrent sentences, Alexis argued that they should count only as one conviction for the purpose of the armed career criminal designation. The district court overruled Alexis's objection and sentenced him to 232 months' imprisonment.

On appeal, Alexis makes three different arguments not raised below: (1) current application of the Armed Career Criminal Act (the "ACCA") contradicts legislative intent to

___

* The Honorable Pamela L. Reeves, United States District Judge for the Eastern District of Tennessee, sitting by designation.

enhance the sentences of the most dangerous offenders; (2) Alexis should not be classified as an armed career criminal because his felony convictions would not trigger enhanced punishments under the Federal Sentencing Guidelines or the Immigration and Nationality Act; and (3) Alexis should not be designated as an armed career criminal because he has no history of violent conduct or armed crime.

These policy arguments have previously been considered and rejected by our court. The applicable law is well-settled, and the district court properly applied it to the undisputed facts of Alexis's case. Accordingly, Alexis's sentence will be affirmed.

I.

On July 2, 2009, Steeve Alexis sold oxycodone to a police operative. Just over two weeks later, on July 17, 2009, Alexis sold oxycodone to a police operative a second time. That day, police attempted to arrest Alexis, and he fled—leading the police on a high speed chase, traveling between 65 and 75 miles per hour and running three stop lights. The police terminated the chase after judging further pursuit to be too dangerous, and Alexis eventually escaped on foot after driving his car through two fences. Ten days after fleeing from the police, Alexis sold oxycodone to a police operative for a third time. He was finally arrested on July 31, 2009.

In February 2010, Alexis pled guilty to three separate counts of an indictment charging him with trafficking in a controlled substance—one count for each of the three occasions Alexis sold oxycodone to a police operative.[1] On February 16, 2010, the court sentenced Alexis to seven years for each count of trafficking in a controlled substance, to be served concurrently. Alexis was paroled on January 6, 2011.

---

[1] Alexis also pled guilty to two other counts charging him with fleeing and evading police in the first degree, and criminal mischief in the first degree.

On October 29, 2012, Alexis sold narcotics to a confidential informant at his residence in Winchester, Kentucky. Based on that purchase, the Winchester Police Department obtained and executed a search warrant at Alexis's home, where they seized cocaine, marijuana, drug paraphernalia, and a loaded 9mm firearm. Alexis was charged in a single-count indictment for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He pled guilty pursuant to a plea agreement on December 23, 2013.

The Probation Office's Presentence Investigation Report (the "PSR") recommended Alexis be designated an armed career criminal under 18 U.S.C. § 924(e)(1) because Alexis had three qualifying "serious drug offenses"—the three convictions for trafficking oxycodone. Alexis did not dispute the existence of the prior convictions. Instead, he argued that, because his sentences ran concurrently for all three drug offense convictions, they should not count separately for the purposes of the ACCA. At sentencing, the district court overruled Alexis's objection, stating that:

> In this particular matter, the factual information is not in dispute as set forth in the [PSR]. It is quite lengthy, and it indicates that there were three separate purchases of oxycodone from the defendant on July 2nd, July 17th, and July 27th, again, as set forth in the descriptive paragraph, paragraph 44, in addition to the fleeing and evading conviction as well.

> If the Court only considers the drug convictions, they would be included as three qualifying offenses under the Armed Career Criminal Act.

Accordingly, the district court overruled Alexis's objection and adopted the PSR.

Without the armed career criminal designation, Alexis would have had a guidelines range of 70-87 months in prison. Because Alexis was designated an armed career criminal, his guidelines range increased to 188-235 months in prison, with a mandatory minimum of 180

3

months. The district court sentenced Alexis to 232 months in prison on April 16, 2014. This appeal followed.[2]

## II.

*De novo* review applies to the district court's conclusion that Alexis's three drug-trafficking crimes were committed on different occasions and satisfy the three "serious drug offenses" predicate to designation as an armed career criminal. *United States v. Hill*, 440 F.3d 292, 295 (6th Cir. 2006).

Plain-error review applies to Alexis's three policy-based arguments that were not raised during sentencing. *United States v. Hockenberry*, 730 F.3d 645, 663 (6th Cir. 2013) (citing *United States v. Lumbard*, 706 F.3d 716, 720 (6th Cir. 2013)). In *Lumbard*, we explained that plain-error review involves a four-step inquiry under Federal Rule of Criminal Procedure 52(b):

> First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

*Lumbard*, 706 F.3d at 721 (internal quotation marks omitted).

## III.

### 1. *Correct Application of Sixth Circuit Precedent*

Under the ACCA, defendants who have been convicted of illegally possessing a firearm in violation of 18 U.S.C. § 922(g) face a mandatory minimum fifteen-year prison sentence if they

---

[2]Alexis has filed a motion pursuant to Federal Rule of Evidence 201 requesting that this court take judicial notice of the indictment and final judgment from the Harrison County, Kentucky, Circuit Court, Case No. 09-CR-033, the case from which Alexis's armed career criminal designation stems. Rule 201 permits judicial notice of facts not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. The Harrison County Circuit Court's records fall squarely within this category. Alexis's motion is therefore granted.

have three previous convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In *Hill*, 440 F.3d at 297-98, we established that two offenses are committed on different occasions from one another if: (1) "it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins;" (2) "it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense;" or (3) "the offenses are committed in different residences or business locations." Offenses are separate if they meet any of the three tests established by *Hill*. *United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012) (citing *United States v. Paige*, 634 F.3d 871, 873 (6th Cir. 2011)); *see also United States v. Banner*, 518 F. App'x 404, 406 (6th Cir. 2013) ("So long as a defendant's offenses meet one of the *Hill* tests, the amount of time between the individual offenses is relatively unimportant."). Finally, the fact that multiple offenses were charged in one indictment and consolidated for plea purposes is irrelevant, as is the fact that the sentences for multiple offenses ran concurrently. *United States v. Martin*, 526 F.3d 926, 940 (6th Cir. 2008).

Alexis's three drug offenses meet the first and second *Hill* tests. Fifteen days separated the first and second offenses, and ten days separated the second and third offenses. "Because each offense occurred on a separate day, there is a distinct separation between the beginning and ending of all three offenses." *Banner*, 518 F. App'x at 406. Additionally, during the time separating Alexis's offenses, he had the ability to cease his criminal conduct and withdraw without committing a subsequent offense. We have held that periods of time far shorter than ten days between offenses qualify as separate episodes. *See, e.g., United States v. Thomas*, 381 F. App'x 495, 506 (6th Cir. 2010) (holding that a defendant committed separate offenses when he

robbed multiple individuals within minutes at the same location because he retreated on foot to the corner of the block or to hide behind cars between every robbery, each time making a conscious decision to return to the scene to rob another victim).

Because Alexis was convicted of illegally possessing a firearm after previously being convicted of three separate, serious drug offenses, he meets the standard for designation as an armed career criminal, and the district court was correct to overrule Alexis's objection to the PSR.

## 2. *Policy-Based Challenges to the ACCA*

On appeal, Alexis does not challenge the district court's application of *Hill*. Instead, he challenges our interpretation of the ACCA and the Act itself. In doing so, Alexis makes three policy arguments not raised before the district court.

*First*, Alexis argues that his classification as an armed career criminal contradicts the legislative intent of protecting the public and deterring hardened, violent criminals because Alexis "is capable of rehabilitation and committed these related predicate offenses in a short span of three weeks." (Appellant's Brief, p. 12). We addressed and rejected this argument in *Banner* as follows:

> Defendant asks us to change the aforementioned established law on the basis of a policy argument outlined by the dissent in *Brady*. [*United States v. Brady*, 988 F.2d 664, 670–77 (6th Cir. 1993) (Jones, J., dissenting)]. In reliance on the *Brady* dissent, defendant argues that the ACCA was meant to enhance punishments for "only incorrigible, habitual criminals," but not for individuals who happened to commit three crimes in a relatively short time period like defendant. *Id.* at 672. Since the *Brady* decision, however, this Court has repeatedly rejected this argument. . . . We will continue to follow this circuit's established precedent.

518 F. App'x at 407 (collecting cases). Importantly, even if we were persuaded by Alexis's policy arguments, we do not have the authority to overrule *Hill*, which would require a ruling of

6

the Supreme Court or our *en banc* court. *See Paige*, 634 F.3d at 873 (citing *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 235 (6th Cir. 2003)).

*Second*, Alexis contends that the ACCA should adopt the framework of the Federal Sentencing Guidelines or Immigration and Nationality Act by evaluating the sentence imposed for past convictions to determine their severity as opposed to using the categorical approach employed by the ACCA. Alexis points out that under the Federal Sentencing Guidelines he would only have one predicate sentence for his past felony convictions. Alternatively, in a deportation hearing, his culpability would be measured by the length of the sentence imposed for his felony convictions. Alexis argues that both of these approaches better serve the policy goals of the ACCA. Such comparisons, however, are inapposite.

We have previously explained that "whether the offenses were consolidated for sentencing is immaterial to counting predicate offenses under the ACCA, even though such consolidation orders may be relevant under the otherwise applicable Sentencing Guidelines." *United States v. Jones*, 52 F. App'x 244, 246-47 (6th Cir. 2002) (citing *United States v. Warren*, 973 F.2d 1304, 1310 (6th Cir. 1992)). Alexis's objections appear to be with the content of the ACCA itself, and not with our interpretation of it. Such objections cannot be remedied by the courts. "Whatever latent problems may exist with the [ACCA], the responsibility for correcting them continues to lie with the legislature, and not with this Court." *United States v. Kearney*, 675 F.3d 571, 577 n.6 (6th Cir. 2012).

*Third*, Alexis argues that he should not be designated as an armed career criminal because he has no previous history of violent conduct or armed crime. This objection, like the previous two, concerns the perceived disconnect between the cited purposes of the ACCA and its application as written. That is an issue that could be addressed by Congress, but cannot be

changed by the courts.  Under the ACCA, it is not necessary for a defendant to have a previous history of violent conduct or armed crime.  A history of three serious drug offenses committed on separate occasions followed by a felon-in-possession conviction satisfies the ACCA's requirements for armed career criminal designation.

## IV.

The district court properly applied our precedent in determining that each of Alexis's three drug felonies was a separate offense for the purposes of the ACCA.  Because each of Alexis's policy-based objections is foreclosed by well-established Sixth Circuit precedent and the text of the ACCA, there is no clear error in the district court's decision.  Alexis's sentence is **affirmed**.